EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Zoraida Velázquez Ortiz | |
| Recurrida | Certiorari |
| v. | 2017 TSPR 39 |
| Gobierno Municipal de Humacao | 197 DPR ____ |
| Peticionario | |

Número del Caso: CC-2014-242

Fecha: 17 de marzo de 2017

Tribunal de Apelaciones:

    Región Judicial de Humacao

Abogados de la Parte Peticionaria:

    Lcdo. Pedro Ortiz Alvarez
    Lcdo. Jesús Rodríguez Urbano
    Lcdo. Jorge Martínez Luciano

Abogados de la Parte Recurrido:

    Lcdo. Carlos Mondríguez Torres
    Lcda. Rosa Albizu-Campos

Materia: Derecho Laboral – Comienzo del término prescriptivo para presentar demanda de hostigamiento sexual por ambiente hostil al amparo de la Ley de Hostigamiento Sexual en el empleo. Reclamación de empleado transitorio al amparo de la Ley de Represalias.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Zoraida Velázquez Ortiz

    Recurrida

      v.                    CC-2014-0242     *Certiorari*

Gobierno Municipal de Humacao

    Peticionario

Opinión del Tribunal emitida por la Jueza Presidenta Oronoz Rodríguez

En San Juan, Puerto Rico, a 17 de marzo de 2017.

La controversia que hoy atendemos nos permite determinar a partir de qué momento comienza a transcurrir el término prescriptivo para presentar una demanda de hostigamiento sexual por ambiente hostil al amparo de la Ley de Hostigamiento Sexual en el Empleo, *infra*. Asimismo, nos permite contestar si un empleado transitorio que presenta una queja administrativa puede reclamar por represalias cuando el patrono posteriormente no renueva su contrato de trabajo.

Por las razones que exponemos a continuación, resolvemos que en las reclamaciones de hostigamiento sexual por ambiente hostil el término prescriptivo

comienza a correr a partir de la fecha en que ocurre el último acto de hostigamiento, siempre que no hayan circunstancias de coacción o intimidación que impidan el ejercicio de la acción. En cuanto a la segunda controversia, concluimos que la Ley de Represalias, *infra*, cobija dentro de su definición de "empleado" a los empleados transitorios. Veamos.

I

En abril de 2008, la Sra. Zoraida Velázquez Ortiz (recurrida) empezó a trabajar como enfermera con contrato transitorio en el Asilo Simonet, el cual está adscrito al Municipio Autónomo de Humacao (Municipio). A partir del 21 de abril de 2009, luego de agotar su licencia por maternidad, la recurrida comenzó a ser objeto de un presunto patrón de hostigamiento sexual por parte de otra enfermera, la Sra. María Hernández Paulino. Según alegó, este patrón de hostigamiento consistió de comentarios y conducta de índole sexual.

A pesar de haberle expresado que dicha conducta era indeseada y pedirle que cesara, la señora Hernández Paulino continuó realizándola. Por esta razón, la recurrida fue a hablar con su supervisora, la Sra. Antonia Morales Concepción, pero ésta no se encontraba en el momento. No obstante, le contó lo que estaba sucediendo a la secretaria de la señora Morales Concepción, quien le dijo que se lo informaría. La supervisora nunca contactó a la recurrida. En vista de que los actos de hostigamiento

continuaron, el 23 de junio de 2009 la recurrida acudió a la oficina de la señora Morales Concepción, le indicó lo que estaba pasando y le solicitó que reuniera a la señora Hernández Paulino para resolver la situación.

La señora Morales Concepción le dijo que la reunión no podría llevarse a cabo pues ella se iba de vacaciones. Ante la insistencia de la recurrida, le sugirió que hablara directamente con la señora Hernández Paulino. Así, unas horas más tarde la recurrida increpó a la señora Hernández Paulino, lo que desembocó en una confrontación física entre ambas. Al día siguiente la recurrida presentó una querella en la Policía y una queja en el Departamento de Recursos Humanos del Municipio, luego de lo cual la señora Hernández Paulino y la recurrida fueron separadas en turnos distintos.

El 30 de junio de 2009 expiró el contrato de la recurrida. El Municipio le renovó el contrato hasta el 15 de agosto de 2009 y, luego de eso, no lo volvió a renovar. En consecuencia, el 24 de junio de 2010 la recurrida presentó una demanda por hostigamiento sexual y represalias en contra de la señora Hernández Paulino, la señora Morales Concepción[1] y el Municipio. En cuanto a este último, alegó que sabía de los actos de hostigamiento sexual e incumplió su deber de proveer un ambiente de trabajo seguro. Asimismo, sostuvo que la no renovación de

---

[1] Tiempo después, la recurrida desistió de su reclamación en contra de la señora Morales Concepción.

su contrato fue en represalia por haber presentado la queja de hostigamiento sexual.

Tras varios incidentes procesales, el Tribunal de Primera Instancia dictó una sentencia sumaria parcial a favor de la señora Hernández Paulino. Determinó que el plazo prescriptivo de una reclamación de hostigamiento sexual es un año, por lo que la acción contra la señora Hernández Paulino estaba prescrita. Ello, pues según lo admitió la propia recurrida, luego del incidente del 23 de junio de 2009 no hubo ningún otro acto de hostigamiento ni contacto alguno con la señora Hernández Paulino. Habiéndose presentado la demanda el 24 de junio de 2010, 366 días desde la fecha en que cesó todo contacto entre las partes, la reclamación estaba prescrita. Esta decisión advino final y firme.

Por este mismo fundamento, el Municipio solicitó que se dictara sentencia sumaria a su favor. Por otro lado, en lo referente a la causa de acción por represalias alegó que no había controversia en cuanto a que la recurrida era una empleada transitoria sin derecho a permanencia en el puesto, por lo cual la no renovación de su contrato no constituyó un despido. Asimismo, adujo que después del incidente del 23 de junio de 2009 le había extendido el contrato a la recurrida hasta el 15 de agosto de 2009; que la última evaluación reflejó un desempeño menos satisfactorio; y que otras enfermeras con contratos transitorios también fueron cesanteadas.

La recurrida se opuso y argumentó que el término prescriptivo de la reclamación de hostigamiento sexual no podía calcularse desde el altercado del 23 de junio de 2009. Ello, pues aunque desde entonces no volvió a tener más contacto con la señora Hernández Paulino, continuó el ambiente hostil debido a que el Municipio no llevó a cabo acciones afirmativas para evitar el hostigamiento. De otra parte, en cuanto a la causa de acción por represalias, presentó prueba documental para controvertir las alegaciones del Municipio. A pesar de ello, el Tribunal de Primera Instancia declaró con lugar la moción de sentencia sumaria y desestimó la demanda en su totalidad.

En desacuerdo, la recurrida acudió al Tribunal de Apelaciones. Dicho foro revocó la sentencia al concluir que el foro primario erró al disponer sumariamente del caso, ya que varios de los hechos materiales estaban en controversia. En específico, concluyó que el ambiente hostil pudo haber continuado después de que terminaron los actos de hostigamiento. En cuanto a la no renovación del contrato, resolvió que la prueba documental sometida por el Municipio era insuficiente para despejar las dudas sobre posibles represalias. Por lo tanto, procedía que el Tribunal de Primera Instancia le diera curso al trámite ordinario para aclarar estos asuntos.

Inconforme, el Municipio recurrió ante este Tribunal y, en síntesis, alegó que el tribunal intermedio erró al

determinar que la causa de acción de hostigamiento sexual no estaba prescrita, así como al resolver que la recurrida había planteado una reclamación viable por represalias. Tras evaluar las controversias, decidimos expedir el recurso. Con el beneficio de los alegatos de ambas partes, procedemos a resolver.

II

A. *La sentencia sumaria*

La sentencia sumaria es un mecanismo procesal para disponer de ciertos casos sin necesidad de llegar a la etapa de juicio. Ramos Pérez v. Univisión, 178 DPR 200, 213 (2010). Ello, pues al no haber controversia sustancial y real sobre hechos materiales, sólo falta aplicar el derecho pertinente a la controversia. Cuando se habla de hechos materiales nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. R. Hernández Colón, Derecho procesal civil, 5ta ed., LexisNexis de Puerto Rico, 2010, pág. 276. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales. Luan Invest Corp. v. Rexach Const. Co., 152 DPR 652 (2000).

La parte que solicita que se dicte sentencia sumaria tiene que establecer su derecho con claridad y demostrar que los hechos materiales se encuentran incontrovertidos. De otro lado, la parte que se opone tiene que contestar de

forma específica y detallada para poner al juzgador en posición de concluir que persisten dudas acerca de los hechos esenciales de la causa de acción. Ramos Pérez v. Univisión, supra, págs. 213, 215.

Al tomar una determinación el tribunal debe analizar la prueba documental que acompaña la solicitud de sentencia sumaria, así como los documentos incluidos en la moción en oposición y aquellos que se encuentran en el expediente. Cruz Marcano v. Sánchez Tarazona, 172 DPR 526, 550 (2007). Por eso, hemos dicho que no es aconsejable utilizar el mecanismo de sentencia sumaria cuando existe controversia respecto a elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial y esté en disputa. No obstante, aún en tales casos hemos validado su uso cuando de la prueba documental surge claramente que no hay controversia sobre los hechos materiales. Ramos Pérez v. Univisión, supra, pág. 219.

B. *La causa de acción por hostigamiento sexual*

Con la aprobación de la Ley Núm. 17 de 22 de abril de 1988 (Ley Núm. 17-1988),[2] 29 LPRA sec. 155 et seq., se estableció como política pública la erradicación de todo vestigio de conducta constitutiva de hostigamiento sexual en el lugar de trabajo.[3] S.L.G. Afanador v. Roger Electric

---

[2] Conocida como *Ley de Hostigamiento Sexual en el Empleo.*
[3] El Art. 1 de la Ley Núm. 17-1988 dispone:
     Esta Asamblea Legislativa resuelve y declara como política pública del Estado Libre Asociado de Puerto Rico que el hostigamiento sexual en el empleo es una forma de

Co., Inc., 156 DPR 651, 661 (2002). Esta Ley le impuso al patrono privado y público el deber de mantener el centro de trabajo libre de hostigamiento sexual e intimidación. 29 LPRA sec. 155h. Para lograr su cometido, la Ley Núm. 17-1988 creó una causa de acción a favor del empleado víctima de hostigamiento sexual, de forma que:

> [u]n patrono será responsable por los actos de hostigamiento sexual entre empleados en el lugar de trabajo si el patrono o sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta, a menos que el patrono pruebe que tomó una acción inmediata y apropiada para corregir la situación. 29 LPRA sec. 155e.

Así, hemos reconocido dos modalidades de hostigamiento sexual: el hostigamiento quid pro quo y el hostigamiento sexual por ambiente hostil. Rodríguez Meléndez v. Sup. Amigo, Inc., 126 DPR 117 (1990). Sobre este último, que es el pertinente a la controversia de autos, hemos dicho que:

> envuelve conducta de naturaleza sexual por parte del hostigador la cual interfiere irrazonablemente con el desempeño del empleado en su trabajo o es lo suficientemente severa y ofensiva como para crearle al empleado que es víctima de la misma, un ambiente de trabajo que resulte intimidante, hostil u ofensivo. S.L.G. Afanador v. Roger Electric Co., Inc., supra, pág. 662.

Al considerar la modalidad de hostigamiento sexual por ambiente hostil debemos tener presente que ésta se compone de actos de naturaleza sexual que suceden dentro de un

---

discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra el principio constitucional establecido de que la dignidad del ser humano es inviolable. Es la intención de esta Asamblea Legislativa prohibir el hostigamiento sexual en el empleo, imponer responsabilidades y fijar penalidades. 29 LPRA sec. 155.

periodo de tiempo y crean un ambiente intimidante y aprehensivo para la víctima. In re Robles Sanabria, 151 DPR 483, 500 (2000). Esta modalidad se caracteriza por la multiplicidad de los actos de índole sexual, los cuales en conjunto crean el ambiente abusivo y hostil, pues cada acto aislado podría no ser lo suficientemente severo como para dar lugar a una causa de acción. In re Robles Sanabria, supra, pág. 500; Rodríguez Meléndez v. Sup. Amigo, Inc., 126 DPR 117, 132 (1990).

De otra parte, en cuanto a la reclamación por hostigamiento sexual, el Art. 14, 29 LPRA sec. 155m, establece el término prescriptivo de un año para presentarla. Este Artículo también dispone que: "[e]l término prescriptivo en acciones por hostigamiento sexual en el empleo debe comenzar a decursar [sic] cuando se terminan las circunstancias que podrían entorpecer el ejercicio de la acción". Íd.

Anteriormente, al tratar de precisar el momento en que comienza a transcurrir dicho término, algunos jueces de este Tribunal compararon los daños causados por el hostigamiento sexual en la modalidad de ambiente hostil con los llamados daños continuados. Véase, Umpierre Biascochea v. Banco Popular, 170 DPR 205, 219 (2007)(Sentencia)(Op. de conformidad; Rodríguez Rodríguez, J.). Los daños continuados son:

> [aquellos] producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuencias

lesivas ininterrumpidas, sostenidas, duraderas, sin interrupción, unidas entre sí, las cuales al ser conocidas hace también que se conozca -por ser previsible- el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de daño actual (aquel que ya ha acaecido), y de daño futuro previsible y por tanto cierto. H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. JTS, 1986, Vol. II, Cap. X, pág. 648. Véase Rivera Ruiz, et al. v. Mun. de Ponce, 2016 TSPR 197, 7, 196 DPR ____ (2016).

Como se ve, los daños continuados presentan tres rasgos distintivos: 1) uno o varios actos culposos o negligentes imputables al mismo actor; 2) los cuales ocasionan daños que se manifiestan ininterrumpidamente; 3) y que en conjunto conforman un proceso perjudicial progresivo de carácter unitario. J.L. Lacruz Berdejo, Elementos de Derecho Civil II: Derecho de obligaciones, 3ra ed., Barcelona, Ed. José María Bosch, 1995, Vol. 2, pág. 518.

En vista de estas características, los daños continuados configuran una sola causa de acción que incluye todas las consecuencias lesivas ininterrumpidas ocasionadas por los actos culposos o negligentes. Rivera Prudencio v. Mun. de San Juan, 170 DPR 149, 167 (2007). Así, la doctrina sostiene que no es hasta la producción del resultado definitivo o cuando se verifica el fin de la conducta ilícita que comienza a correr el término prescriptivo para reclamar por estos daños.[4]

---

[4] "El TS [Tribunal Supremo español] ha dicho que es consolidada doctrina jurisprudencial la que refiere el comienzo del cómputo de la prescripción en este tipo de casos cuando se trata de daños

Véase, I. Sierra Gil de la Cuesta, Comentario del Código Civil, Barcelona, Ed. Bosch, 2000, T. 9, pág. 554; F. Reglero Campos en M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1994, T. XXV, Vol. 2, pág. 458; Lacruz Berdejo, supra, pág. 518.

En ese contexto, recientemente en Rivera Ruiz, *et al.* v. Mun. de Ponce, 2016 TSPR 197, 196 DPR ____ (2016), aclaramos la confusión doctrinal que existía en nuestro ordenamiento legal con respecto al comienzo del término prescriptivo en un caso de daños continuados.[5] A esos efectos, resolvimos que dicho término empieza a transcurrir "cuando se verifiquen los últimos actos u omisiones o se produzca el resultado definitivo, lo que sea posterior". Íd., pág. 19.

Examinado lo anterior, concluimos que el hostigamiento sexual por ambiente hostil constituye una modalidad de daños continuados. Recordemos que el ambiente hostil se

---

continuados... a aquel en que se produce el resultado definitivo". L. Díez-Picazo y Ponce de León, La prescripción extintiva en el Código Civil y en la jurisprudencia del Tribunal Supremo, Madrid, Ed. Thompson-Civitas, 2003, pág. 253. Véase también J. Puig Brutau, Caducidad, prescripción extintiva y usucapión, 3ra ed., Barcelona, Ed. Bosch, 1996, pág. 79.

[5] Véanse Umpierre Biascochea v. Banco Popular, 170 DPR 205 (2007)(Sentencia); Rivera Prudencio v. Mun. de San Juan, 170 DPR 149 (2007); Nazario v. ELA, 159 DPR 799 (2003)(Sentencia); Santiago v. Ríos Alonso, 156 DPR 181 (2002); Sánchez, *et al.* v. AEE, 142 DPR 880 (1997)(Sentencia); Galib Frangie v. El Vocero de Puerto Rico, 138 DPR 560 (1995); Seda v. Miranda Hnos. & Co., 88 DPR 355 (1963); Arcelay v. Sánchez, 77 DPR 824 (1955); Capella v. Carreras, 57 DPR 258 (1940). Véanse además, J.J. Álvarez González, *Análisis del Término 2006-2007- Responsabilidad civil extracontractual,* 77 Rev. Jur. UPR 603, 617-619 (2008); J.J. Álvarez González, *Análisis del Término 2001-02- Responsabilidad civil extracontractual,* 72 Rev. Jur. UPR 615, 638-642 (2003).

compone de varios actos aislados de índole sexual, relacionados entre sí por una causa común, que en conjunto configuran un patrón de hostigamiento y producen los daños ininterrumpidos que dan lugar a la causa de acción una vez se verifica el último de los actos.

Así, por ejemplo, el profesor Irizarry Yunqué ha dicho que:

> [e]n cuanto a la distinción entre daños continuos o continuados y daños sucesivos, a mi juicio, cuando se crea un ambiente hostil en el empleo mediante hostigamiento sexual que constituye, a su vez, un patrón de conducta continua, se crea en el empleado o empleada la aprensión de que en cualquier momento puede ser objeto de esa conducta ofensiva. Ello crea, a su vez, un daño continuo. No me parece que cada acto de hostigamiento deba considerarse como un acto aislado y que, por tanto, surja una causa de acción separada con cada acto de hostigamiento. El ambiente hostil se crea mediante la repetición de los actos de hostigamiento. C.J. Irizarry Yunqué, Responsabilidad civil extracontractual, 7ma ed., 2009, pág. 505.

De forma similar, en el contexto de una causa de acción sobre daños y perjuicios por actos de violencia doméstica este Tribunal determinó que:

> los actos de maltrato físico, emocional y sicológico componen un cuadro de daños que, unidos, van encadenándose para producir el efecto neto del maltrato y así, en dicha circunstancia, el último daño acaecido forma parte de ese ciclo de maltrato y genera la causa de acción por éste y por los actos de maltrato anteriores componentes del referido patrón de violencia. En dichos casos, para determinar que la reclamación no está prescrita, el acto generador de la causa de acción tiene que haber ocurrido dentro del año que precedió la radicación de la demanda. Santiago v. Ríos Alonso, 156 DPR 181, 192 (2002).

Tomando en cuenta lo anterior, resolvemos que el término prescriptivo de una acción de hostigamiento sexual por ambiente hostil comienza a transcurrir luego del último acto de hostigamiento; es decir, cuando cesa la conducta ilícita que creó el ambiente hostil y originó la reclamación.[6] Esto es así siempre y cuando no existan circunstancias constitutivas de coacción o intimidación que interfieran con el ejercicio de la causa de acción. En tales casos, el término no empieza a correr hasta que cesan dichas circunstancias y se tiene la oportunidad de ejercer la acción. 29 LPRA sec. 155m.

Además de ser congruente con el referido Artículo de la Ley Núm. 17-1988, con nuestra jurisprudencia y con la doctrina sobre daños continuados, fijar el comienzo del término prescriptivo a partir del último acto de hostigamiento permite establecer un punto preciso para el inicio de dicho término, lo que evita que el hostigador pueda plantear a su favor la defensa de prescripción mientras perdura su conducta antijurídica.[7] Asimismo, se promueve la certeza al momento de determinar el comienzo del plazo prescriptivo y la estabilidad en las relaciones jurídicas.

---

[6] Por supuesto, la víctima tendrá derecho a reclamar una indemnización no sólo por los daños que sufrió mientras perduró el hostigamiento sexual, sino también por los que haya sufrido después del último acto como consecuencia del hostigamiento.

[7] Por eso, por ejemplo, si la víctima no demanda dentro del año pero posteriormente ocurre un nuevo acto que forma parte del mismo patrón de hostigamiento, ésta puede demandar dentro del año a partir de ese nuevo acto y reclamar una indemnización que incluya los daños causados por los actos anteriores de hostigamiento.

C. *La causa de acción por represalias*

La Ley Núm. 115 de 20 de diciembre de 1991 (Ley Núm. 115-1991),[8] 29 LPRA sec. 194 et seq., se aprobó con el propósito de proteger a los trabajadores contra posibles represalias por parte de los patronos, motivadas por el ofrecimiento de testimonio o información ante ciertos foros. Cordero Jiménez v. UPR, 188 DPR 129, 136 (2013). En específico, su Art. 2(a), según enmendado, dispuso que:

> Ningún patrono podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. 29 LPRA sec. 194a.

Para compeler a su cumplimiento, la Ley Núm. 115-1991 creó una causa de acción a favor de los empleados.[9] Al considerar cuáles empleados están cobijados, debemos primero atender a la definición que la propia Ley provee. El Art. 1 define "empleado" como "cualquier persona que preste servicios a cambio de salarios, o cualquier tipo de remuneración, mediante contrato oral, escrito, implícito o explícito". 29 LPRA sec. 194.

---

[8] También conocida como *Ley Contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial.*

[9] Ésta tiene un término prescriptivo de tres años a partir de la acción adversa constitutiva de represalia.

Tratándose de una definición amplia, que pudiera dar lugar a interpretaciones disímiles, conviene acudir al historial legislativo y escudriñar la intención del legislador.[10] Al hacerlo, encontramos que el Informe de las Comisiones de lo Jurídico y de Trabajo y Asuntos del Veterano y Recursos Humanos del Senado, a cargo del estudio de la medida, aclaró categóricamente que la Ley protege a toda clase de empleado, con independencia de su clasificación. Cordero Jiménez v. UPR, supra, pág. 143; Rivera Prudencio v. Mun. de San Juan, supra, pág. 164. El Informe expresa que:

> El Proyecto va dirigido a proteger a cualquier empleado sin distinción de puesto o empresa de manera que el mismo será de aplicación contra todo tipo de patrono. La medida logra este propósito ampliando las definiciones de "empleado", "patrono" y "persona". El Proyecto propuesto defiende intereses de política pública importantes como la protección de los derechos de los trabajadores y la facultad investigativa de la Rama Legislativa. *Informe de las Comisiones de lo Jurídico y de Trabajo y Asuntos del Veterano y Recursos Humanos con relación al P. del S. 987 de 20 de febrero de 1991.* (énfasis suplido)

Asimismo, el Secretario del Departamento del Trabajo y Recursos Humanos, en un memorando presentado ante la Comisión de lo Jurídico, indicó que:

> Bajo el esquema remedial del P. del S. 987 se ofrecerá una protección mucho más amplia que bajo la Ley Núm. 80. Nótese que, entre otras cosas, el proyecto protegerá a todo tipo de empleado (**y no sólo a aquellos contratados sin tiempo determinado**); brindará protección contra actos de despido, amenaza o discrimen; y

---

[10] Ello, pues "[e]l medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al legislador a dictarla". 31 LPRA sec. 19.

protegerá al empleado aunque la información que ofrezca o intente ofrecer no esté relacionada con el negocio del patrono. *Memorando de la Oficina del Secretario del Departamento del Trabajo y Recursos Humanos con relación al P. del S. 987 de 20 de febrero de 1991* (énfasis suplido).

De otra parte, en cuanto al esquema probatorio la propia Ley Núm. 115-1991, en su Art. 2(c), dispuso las dos vías que tienen los empleados para establecer una causa de acción por represalias. En la primera, el empleado debe valerse de evidencia directa o circunstancial para probar una violación de la Ley. En la segunda, el empleado puede establecer un caso *prima facie* de represalias demostrando que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado. 29 LPRA sec. 194a(c).[11] Rivera Menéndez v. Action Service, 185 DPR 431, 445 (2012); Feliciano Martes v. Sheraton, 182 DPR 368, 393 (2011).

Con respecto al primer requisito, este Tribunal ha dicho que cuando un empleado municipal ofrece testimonio o información ante un foro administrativo municipal, éste participa de una actividad protegida. Rivera Prudencio v. Mun. de San Juan, supra, pág. 164. Por su parte, el segundo requisito requiere que se demuestre que el patrono tomó una acción adversa y que existe un nexo causal entre

---

[11] El resto del Art. 2(c), el cual completa el esquema probatorio, dice que: "[u]na vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido". 29 LPRA sec. 194a(c).

dicha acción y el ejercicio de la actividad protegida. Marín v. Fastening Systems, Inc., 142 DPR 499, 511 (1997).

Esta relación de causalidad puede establecerse mediante un criterio de proximidad temporal. Esto es, se puede configurar un caso *prima facie* de represalias estableciendo que la acción adversa ocurrió al "poco tiempo" del empleado haber participado en la actividad protegida. Rivera Menéndez v. Action Service, supra, pág. 446. No obstante, en aquellos casos en que la proximidad temporal no sea el factor más adecuado para establecer una relación de causalidad, el empleado puede recurrir a cualquier otra evidencia que obre en el expediente y que tienda a demostrar la existencia de un nexo causal. Feliciano Martes v. Sheraton, supra, pág. 400.

### III

En este caso las partes no disputan que el último acto de hostigamiento sexual ocurrió antes del 23 de junio de 2009. Asimismo, es un hecho incontrovertido que la recurrida presentó su demanda el 24 de junio de 2010, es decir, 366 días después de la fecha en que cesó todo contacto entre la señora Hernández Paulino y la recurrida.[12] No obstante, ésta alega que su reclamación por

---

[12] Aunque del expediente no aparenta que el 23 de junio de 2009 haya sucedido un acto de naturaleza sexual propiamente –sino una confrontación física–, el Tribunal de Primera Instancia computó el comienzo del plazo prescriptivo a partir de esa fecha y ello no fue objeto de señalamiento u objeción por las partes. Sin embargo, lo anterior no hace diferencia alguna en cuanto al resultado, pues de haber ocurrido el último acto de hostigamiento sexual en una fecha anterior, de todos modos la causa de acción está prescrita.

hostigamiento sexual no está prescrita pues el Municipio no llevó a cabo acto afirmativo alguno para evitar el hostigamiento. Por lo tanto, sostiene que al estar aprensiva a que se repitieran otros actos de hostigamiento el término prescriptivo para instar la reclamación al amparo de la Ley Núm. 17-1988 no empezó a transcurrir sino hasta el 15 de agosto de 2009, cuando su contrato transitorio no fue renovado.

Sin embargo, este argumento es contrario a lo que establece la propia Ley Núm. 17-1988. En su Art. 3, ésta claramente establece que el hostigamiento sexual por ambiente hostil consiste de "cualquier... **conducta verbal o física de naturaleza sexual**...[c]uando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo". 29 LPRA sec. 155b. (énfasis suplido). Es decir, siendo este patrón de **conducta** lo que crea el ambiente hostil y genera la causa de acción, es el último **acto** hostigante lo que hace comenzar el término prescriptivo para instar la reclamación. La inacción del patrono para corregir la situación se tomará en cuenta a la hora de establecer su responsabilidad y los daños por los que deberá responder. Sin embargo, ello no suspende el inicio del término prescriptivo, siempre y cuando la víctima no esté sujeta a circunstancias de coacción o intimidación que interfieran con el libre ejercicio de la acción.

En este caso la recurrida no adujo en ningún momento la existencia de este tipo de circunstancias y tampoco surgen de la extensa evidencia documental que obra en autos. Por el contrario, consta en la prueba documental que después del incidente del 23 de junio de 2009 la recurrida y la señora Hernández Paulino fueron separadas en turnos de trabajo distintos y no hubo más contacto o comunicación entre éstas. Por eso, habiendo ocurrido el último acto de hostigamiento sexual antes del 23 de junio de 2009, la causa de acción de la recurrida está prescrita.

Por su parte, el Municipio alega que la recurrida no tiene una reclamación viable de represalias pues, al ser una empleada transitoria, no fue despedida. Asimismo, arguye que como ésta no tenía expectativa de permanencia en el empleo, la no renovación del contrato no constituyó una acción adversa. La consecuencia de este argumento sería que los empleados transitorios, por la naturaleza de su puesto, no tendrían derecho a reclamar represalias bajo la Ley Núm. 115-1991. Sin embargo, luego de examinar el historial legislativo de la Ley Núm. 115-1991 y la política pública que la inspiró, no albergamos duda de que la contención del Municipio es errada.

Como vimos, la Ley Núm. 115-1991 define "empleado" en términos amplios como cualquier persona que presta servicios a cambio de salarios o cualquier tipo de remuneración, mediante contrato escrito o verbal. 29 LPRA

sec. 194. Asimismo, el historial legislativo es claro al establecer que la Ley va dirigida a proteger a "cualquier empleado sin distinción de puesto",[13] y a "todo tipo de empleado (y no sólo a aquellos contratados sin tiempo determinado)".[14] Ello, pues los intereses de política pública que busca adelantar son de la más alta jerarquía: la protección de los derechos de los trabajadores.[15] La intención del legislador fue que la Ley Núm. 115-1991 cobijara a los empleados transitorios de forma que éstos puedan participar en actividades protegidas sin temor a que su contrato no sea renovado.[16]

Resuelto lo anterior, queda claro que la no renovación de un contrato transitorio podría ser una acción adversa que active un caso *prima facie* de represalias si el demandante logra establecer un nexo causal entre su participación en una actividad protegida y la subsiguiente acción adversa. En cuanto a esto, el Tribunal de Primera Instancia a pesar de haber determinado que la recurrida no fue despedida -y que por lo tanto no estableció el elemento de haber sufrido una acción adversa- concluyó que

---

[13] Informe de las Comisiones de lo Jurídico y de Trabajo y Asuntos del Veterano y Recursos Humanos con relación al P. del S. 987 de 20 de febrero de 1991.

[14] Memorando de la Oficina del Secretario del Departamento del Trabajo y Recursos Humanos con relación al P. del S. 987 de 20 de febrero de 1991.

[15] Además, conviene aquí recordar que, como hemos establecido, las leyes laborales "deben ser interpretadas liberalmente, resolviendo toda duda a favor del obrero, para así cumplir con sus propósitos eminentemente sociales y reparadores". Cordero Jiménez v. UPR, supra, pág. 139; Jiménez Hernández v. General Inst., Inc., 170 DPR 14, 64 (2007).

[16] Conviene aclarar que lo resuelto en esta Opinión en torno a la aplicación de la Ley Núm. 115-1991 es solo con respecto a los empleados transitorios por ser ésta la categoría de empleados que tenemos ante nuestra consideración.

de todos modos no existía un nexo causal. Al resolver así, declaró incontrovertidos varios hechos.

En particular, el foro primario determinó que luego del incidente del 23 de junio de 2009 y de que la recurrida presentara la queja, el Municipio renovó su contrato hasta el 15 de agosto de 2009, lo cual evidencia la falta de proximidad temporal entre ambos sucesos. De igual forma, declaró como un hecho incontrovertido que a otras enfermeras contratadas al mismo tiempo tampoco se les renovó el contrato, de lo que dedujo la ausencia de ánimo discriminatorio. En consecuencia, dictó sentencia sumaria y desestimó la demanda.

Sin embargo, el hecho de que a la recurrida se le renovara el contrato luego de haber presentado la queja no basta, sin ulterior consideración, para concluir que no existe un nexo causal. Debe tomarse en cuenta que esa renovación fue por un mes y medio, mientras que las anteriores habían sido por periodos de seis meses. También es pertinente considerar que entre la fecha en que la recurrida se quejó en el Departamento de Recursos Humanos y la fecha en que fue cesanteada, transcurrió poco menos de dos meses. Estas consideraciones no son concluyentes en cuanto a determinar si hay o no un nexo causal. Sin embargo, tampoco debieron descartarse sin más como hizo el Tribunal de Primera Instancia.

Asimismo, la recurrida pudo establecer que varios de los hechos en los cuales se basó el foro primario para

dictar sentencia sumaria están en controversia. Así, por ejemplo, en su oposición a la moción de sentencia sumaria presentó prueba documental de la cual surge que, contrario a lo aducido por el Municipio, a la mayoría de las enfermeras contratadas contemporáneamente con ella se les extendió el contrato con posterioridad al 15 de agosto de 2009. Por su parte, el Municipio alegó que en la última evaluación que se le realizó a la recurrida ésta obtuvo una peor calificación en comparación con evaluaciones previas, lo cual justificaba que no se le renovara el contrato. Sin embargo, de esta misma evaluación surge que ante la pregunta de si emplearía nuevamente a la recurrida, el evaluador contestó que sí.

Por estas razones, el Tribunal de Primera Instancia erró al dictar sentencia sumaria y desestimar la reclamación por represalias. Ante hechos en controversia que pudieran ser relevantes para establecer un nexo causal, el foro primario debió dar curso al trámite ordinario y permitir que se presentara la prueba que fuera pertinente, de conformidad con el esquema probatorio de la Ley Núm. 115-1991. En vista de que ello no sucedió, procede devolver el caso al Tribunal de Primera Instancia para que se dilucide lo relacionado a la causa de acción por represalias.

IV

Por los fundamentos que anteceden, se revoca aquella parte de la sentencia del Tribunal de Apelaciones que

resolvió que la reclamación de hostigamiento sexual por ambiente hostil al amparo de la Ley Núm. 17-1988 no está prescrita. En lo referente a la causa de acción por represalias al amparo de la Ley Núm. 115-1991, se confirma la sentencia recurrida y se envía el caso al Tribunal de Primera Instancia para que sigan los procedimientos.


                          Maite D. Oronoz Rodríguez
                               Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Zoraida Velázquez Ortiz

    Recurrida

       v.                          CC-2014-0242       *Certiorari*

Gobierno Municipal de Humacao

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 17 de marzo de 2017.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca aquella parte de la Sentencia del Tribunal de Apelaciones que resolvió que la reclamación de hostigamiento sexual por ambiente hostil al amparo de la Ley Núm. 17-1988 no está prescrita. En lo referente a la causa de acción por represalias al amparo de la Ley Núm. 115-1991, se confirma la sentencia recurrida y se envía el caso al Tribunal de Primera Instancia para que sigan los procedimientos.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco hace constar la siguiente expresión a la cual se une el Juez Asociado señor Estrella Martínez:

"La Jueza Asociada señora Pabón Charneco considera que la Mayoría de este Tribunal diluye el propósito de la Ley Núm. 17 de 22 de abril de 1988, 29 LPRA sec. 155 et seq., así como su jurisprudencia interpretativa, al limitar la existencia de "un ambiente intimidante, hostil u ofensivo" a un último acto de naturaleza sexual para propósitos de prescripción. Esto pues, no toma en consideración las circunstancias que

pueden permear en el ambiente de trabajo para un empleado tras ese último contacto verbal o físico con el hostigador, especialmente cuando la acción tomada por el patrono para corregir la situación de hostigamiento sexual entre empleados en el lugar de trabajo no necesariamente ha sido inmediata y apropiada como exige la legislación. 29 LPRA sec. 155e".

El Juez Asociado señor Estrella Martínez emitió Opinión de conformidad y disidente en parte a la cual se une la Jueza Asociada señora Pabón Charneco.


                              Juan Ernesto Dávila Rivera
                          Secretario del Tribunal Supremo


                    EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Zoraida Velázquez Ortiz

    Recurrida

      v.                        CC-2014-242      Certiorari

Gobierno Municipal de Humacao

    Peticionario

Opinión de conformidad y disidente en parte emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ a la cual se une la Jueza Asociada SEÑORA PABÓN CHARNECO

San Juan, Puerto Rico, a 17 de marzo de 2017.

Por considerar que hoy este Tribunal diluye el propósito de la *Ley de Hostigamiento Sexual en el Empleo*, *infra*, al limitar la existencia de "un ambiente hostil u ofensivo" a un último acto de naturaleza sexual para fines de prescripción, respetuosamente disiento.

De otra parte, estoy conforme con la determinación de la Mayoría de este Tribunal a los efectos de que un empleado transitorio está protegido por la Ley Núm. 115-1991, conocida como *Ley Contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial*, 29 LPRA sec. 194 *et seq.* Ahora bien, según

adelantado, considero que el hostigamiento sexual por ambiente hostil de trabajo es una modalidad de daños continuados, por éstos constituir varios actos aislados de índole sexual, los cuales en conjunto crean un ambiente abusivo y hostil. Por tanto, el término prescriptivo de un año para instar una demanda por hostigamiento sexual comienza a decursar cuando se terminan las circunstancias que podrían entorpecer la ejecución de la acción, siempre y cuando no existan situaciones de coacción o intimidación que puedan impedir el ejercicio de tal causa de acción. En cuyo caso, el término prescriptivo comienza a transcurrir cuando cesan estas condiciones y se tiene la oportunidad de ejercer la acción. Véase, 29 LPRA sec. 155m.

Precisamente, por esas realidades, opino que en el caso ante nuestra consideración, la causa de acción por hostigamiento sexual en la modalidad de ambiente hostil, no está prescrita.

I

Las incidencias en el caso están correctamente consignadas en la Opinión Mayoritaria de este Tribunal. En consecuencia, me limito a resaltar algunos sucesos relevantes.

Los hechos ante nos se originan cuando la Sra. Zoraida Velázquez Ortiz (señora Velázquez Ortiz) regresó a laborar, luego de una licencia de maternidad, como enfermera por contrato transitorio en el Asilo Simonet del Municipio Autónomo de Humacao (Municipio). Ésta sostiene

que fue objeto de un patrón de hostigamiento sexual por parte de una compañera de trabajo, la Sra. María Hernández Paulino (señora Hernández Paulino). Alega que le requirió a la señora Hernández Paulino que cesara la conducta hostigadora y al no tener éxito acudió a su supervisora. Sin embargo, ésta nunca contactó a las empleadas. Finalmente, el 23 de junio de 2009, la señora Velázquez Ortiz y la señora Hernández Paulino tuvieron un altercado físico y verbal por las alegadas actuaciones hostigadoras. Al día siguiente, la señora Velázquez Ortiz presentó una querella ante la Policía y una queja ante el Departamento de Recursos Humanos del Municipio. Aunque la semana siguiente se le renovó el contrato, el cual expiró el 30 de junio de 2009; subsiguientemente no se le renovó, por lo que el 15 de agosto de 2009 cesó en sus funciones.

Así las cosas, el 24 de junio de 2010, la señora Velázquez Ortiz entabló una demanda por hostigamiento sexual y represalias contra el Municipio, la señora Hernández Paulino y otros. En lo que nos concierne, el Municipio solicitó que se dictara sentencia sumaria a su favor. Para ello, argumentó que la acción estaba prescrita y que no procedía un reclamo por represalias, ya que la señora Velázquez Ortiz era una empleada transitoria.

Por su parte, y en cuanto a la acción por hostigamiento sexual, la señora Velázquez Ortiz se opuso e indicó que la acción no estaba prescrita. Sostuvo que el punto de partida para computar el término prescriptivo

comenzó con su despido el 15 de agosto de 2009. Específicamente, señaló que "no se puede concluir que el patrón de hostigamiento cesó con el día de los hechos de agresión entre la demandante y codemandada Hernández Paulino, es decir el 23 de junio de 2009".[17] Argumentó que el hostigamiento sexual en su modalidad de ambiente hostil "no se experimenta sólo con la cercanía física al hostigador y/o solamente en la incomodidad próxima de su entorno laboral", pues "mientras perdure la relación laboral, subsisten los efectos del hostigamiento en su estado anímico y emocional y la ansiedad, producto del ambiente intimidante y hostil del lugar de trabajo al cual debe día a día regresar", por lo que "el hecho de que la hostigadora no volviera a tener otro contacto físico con su víctima no finalizó de forma automática el ambiente hostil al cual estaba sujeta la demandante".[18] Así, la señora Velázquez Ortiz expuso que "no se puede pasar por alto que la demandante vio sus condiciones de empleo afectadas de modo tan significativo e irrazonable que el tener que pensar en coincidir con su hostigadora, aunque fuera sólo en los cambios de turno o sólo ver el vehículo de Hernández en el estacionamiento de empleados, la ponía a temblar y a llorar" e indicó que "su estado anímico […]

---

[17]Véase, *Oposición a Solicitud de Sentencia Sumaria y Solicitud se dicte Sentencia Sumaria Parcial,* Apéndice del recurso de *certiorari*, pág. 282.

[18]Íd.

perduró intacto hasta el último día que permaneció trabajando para el Municipio de Humacao, principalmente porque éste no tomó medida alguna para impedirlo o poner fin al mismo".[19] De esta forma, sostiene que el término prescriptivo comenzó con su despido. Nada expuso ni controvirtió el Municipio sobre este particular, sino que se limitó a reiterar que el último acto ocurrió antes del altercado entre las dos empleadas.

Sopesadas las posturas de las partes, el Tribunal de Primera Instancia procedió a desestimar la demanda en su totalidad. Al así proceder, avaló la postura del Municipio en cuanto a que no procedía una reclamación por represalias, por razón de que la señora Velázquez Ortiz era una empleada transitoria y la causa de acción por hostigamiento sexual estaba prescrita, debido a que el último acto ocurrió el 23 de junio de 2009.

En desacuerdo, la señora Velázquez Ortiz acudió al Tribunal de Apelaciones, el cual revocó el dictamen del foro primario por entender que varios de los hechos esenciales estaban en controversia.

II

La Mayoría de este Tribunal acertadamente expone la norma jurídica que debe imperar en torno a que la Ley Núm. 115-1991 aplica a cualquier tipo de empleado. No obstante, aunque reconoce el deber de los patronos de mantener un

---

[19]Íd., pág. 283.

centro de trabajo libre de hostigamiento sexual e intimidación, premia la falta de acción inmediata y apropiada que se le exige a éstos para corregir la situación, al concluir que la acción presentada contra el Municipio está prescrita. Véase, 29 LPRA secs. 155h, 155e. Es una obligación del patrono tomar aquellas medidas necesarias para prevenir, prohibir y erradicar el hostigamiento sexual en el empleo. Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR 643, 652 (1994). Es decir, hoy la Mayoría de este Tribunal avala la falta de medidas del patrono con relación a su empleada tras una conducta de hostigamiento sexual en su modalidad de ambiente hostil. A mi juicio, este proceder ignora los efectos de este tipo de hostigamiento que repercute e interfiere irrazonablemente en el desempeño de un empleado en su trabajo, creando un ambiente intimidante, hostil y ofensivo. Véase, S.L.G. Afanador v. Roger Electric. Co., Inc., 156 DPR 651, 662 (2002). Tan es así que puede amilanar al empleado o empleada a permanecer o acudir a sus labores y entorpecer sus funciones y progreso en el mismo.

En el caso de hostigamiento sexual por ambiente hostil, hemos sido enfáticos al establecer que este tipo de hostigamiento se produce cuando la conducta sexual tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o crear en el mismo un ambiente intimidante, hostil u ofensivo. Rodríguez Meléndez v. Sup.

Amigo, Inc., 126 DPR 117, 131-132 (1990); véase, además, Rosa Maisonet v. ASEM, 192 DPR 368, 381 (2015); Albino v. Ángel Martínez Inc., 171 DPR 457, 472 (2007); S.L.G. Afanador v. Roger Electric Co., Inc., supra, pág. 662. Este tipo de conducta puede afectar el funcionamiento y la efectividad de la víctima en el empleo, desalentar al empleado a permanecer en éste y dificultarle el progreso en su carrera. Véanse, 29 LPRA sec. 155b(c); S.L.G. Afanador v. Roger Electric Co., Inc., supra; In re Robles Sanabria, 151 DPR 483, 492 (2000).

En este sentido, pesa en mí el que la señora Velázquez Ortiz expresó en su oposición a la solicitud de sentencia sumaria que el ambiente hostil no culminó con el hecho de no tener contacto con la otra empleada. Por el contrario, ésta particularizó que se ponía a temblar y llorar con sólo pensar que podía encontrarse con la señora Hernández Paulino en el cambio de turno o con tan sólo reconocer que estaba presente en el área de trabajo. De hecho, conforme a la deposición de la señora Velázquez Ortiz, surge que este temor se materializó cuando coincidió con la señora Hernández Paulino un día de trabajo en el mismo turno, y ésta tuvo que irse del mismo.[20]

No puedo ignorar que la responsabilidad de mantener un ambiente de trabajo libre de hostigamiento sexual le

---

[20]Véase, Apéndice del recurso de certiorari, págs. 245-246.

corresponde al Municipio. Por tanto, es éste quien deberá responder de incurrir en una omisión e inacción hacia tal deber. Ciertamente, de las reclamaciones que obran en el expediente se desprende que mientras la señora Velázquez Ortiz continuó laborando estuvo expuesta al patrón de conducta de hostigamiento sexual por ambiente hostil que informó a su patrono. Nada impedía la ocurrencia de los actos que dieron lugar a su reclamación. En ocasión anterior, estas consideraciones dieron lugar a las expresiones emitidas por la Juez Asociada señora Rodríguez Rodríguez en su Opinión de conformidad en <u>Umpierre Biascochea v. Banco Popular</u>, 170 DPR 205 (2007), donde resaltó que:

> Una vez la recurrida no regresó a su trabajo, **cesó de estar expuesta al acto que le producía, de acuerdo con su alegación,** los daños por los que reclamaba. Es decir, al no estar en su empleo ella no está expuesta a un ambiente hostil. Siendo imposible entonces la ocurrencia de nuevos actos de naturaleza hostigante, **el punto de partida para el cómputo de la prescripción es el día que cesó de acudir a su empleo, por ser ése el momento en que finalizó la alegada conducta prohibida.** <u>Íd.</u>, pág. 220. (Énfasis suplido).

Asimismo, la Jueza Asociada señora Fiol Matta en su Opinión disidente en <u>Umpierre Biascochea v. Banco Popular</u>, *supra*, destacó que:

> El ambiente hostil no se experimenta sólo con la cercanía física al hostigador y en la incomodidad próxima del entorno laboral. Mientras perdure la relación laboral, la ausencia física de la perjudicada de su lugar de trabajo no suprime los efectos del hostigamiento en su estado anímico y emocional **ni altera la ansiedad producto del ambiente intimidante y hostil del lugar de**

**trabajo al cual debe regresar.** El ambiente hostil creado por el patrón de conducta hostigante no está delimitado por un espacio físico determinado, sino que se encuentra también en un estado mental y emocional de humillación e intimidación que trasciende el lugar de trabajo. Íd., pág. 232. (Énfasis suplido).

III

En el caso de autos, es al Municipio a quien el estatuto le impone la obligación de evitar el alegado hostigamiento sexual, esta responsabilidad estuvo vigente hasta el 15 de agosto de 2009, cuando el contrato de trabajo de la señora Velázquez Ortiz no fue renovado. A mi juicio, y conforme a las alegaciones no controvertidas, es a partir de esa fecha que comienza el periodo prescriptivo de la reclamación contra el Municipio, pues está cimentada en su deber como patrono.[21]

En consecuencia, considero que la causa de acción contra el Municipio no está prescrita, lo que me impide respaldar íntegramente el dictamen de la Mayoría de este Tribunal. En su lugar, confirmaría la sentencia emitida por el Tribunal de Apelaciones y devolvería el caso al Tribunal de Primera Instancia para la continuación de los procesos atendiendo las reclamaciones por hostigamiento

---

[21] Como mínimo, una Mayoría de este Tribunal no debió reducir el cómputo al cese del acto aislado de hostigamiento sexual porque con ello ignora que el criterio rector es el cese del ambiente hostil que se creó con esa conducta, pero que no depende necesariamente de éste solamente, para fines de la responsabilidad del patrono.

sexual en la modalidad de ambiente hostil y la de represalias instadas contra el Municipio.


                                     Luis F. Estrella Martínez
                                          Juez Asociado