Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| JUAN FLORES ORTIZ<br><br>Demandante - Apelante<br><br>v.<br><br>EDMUNDO RIVERA PÉREZ; ANA LUISA MARTÍNEZ MALDONADO; OCUPANTES DE PROPIEDAD SITA EN BARRIO LAS MAREAS CARR. 710 INT. SOLAR #12 GUAYAMA, PR<br><br>Demandados – Apelados | KLAN202400279 | Apelación procedente del Tribunal de Primera Instancia, Sala de Guayama<br><br>Civil núm.: CG2022CV04275<br><br>Sobre: Incumplimiento de Contrato; Daños y Perjuicios; Desahucio |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Por la vía sumaria, el Tribunal de Primera Instancia ("TPI") declaró sin lugar una demanda presentada por el vendedor de inmueble en contra de los compradores. Según se explica en detalle a continuación, concluimos que el récord no le permitía al TPI resolver el caso sumariamente, pues, dependiendo de la resolución de asuntos fácticos sobre los cuales existe incertidumbre, el demandante podría tener derecho a cobrar lo adeudado o bien obtener la resolución del contrato.

I.

En diciembre de 2022, el Sr. Juan Flores Ortiz (el "Vendedor" o "Demandante") presentó la acción de referencia, sobre *Incumplimiento de Contrato, Daños y Perjuicios y Desahucio* (la "Demanda"), contra el Sr. Edmundo Rivera Pérez y la Sa. Ana Luisa Martínez Maldonado (los "Demandados" o "Compradores").

El Vendedor alegó que, mediante una escritura pública autorizada el 19 de abril de 2021, había vendido un inmueble ubicado en Guayama (la "Propiedad") a los Compradores. Alegó que, según lo estipulado en la escritura (el "Contrato"), el precio sería $55,000.00. Afirmó que los Compradores hicieron un primer pago de $10,000.00 y se acordó que el remanente se pagaría a razón de $1,000.00 mensuales.

El Vendedor alegó que, de mayo a diciembre de 2021 (ocho meses), en vez de recibir $8,000.00, según pactado, recibió solo $6,800.00. En cuanto al 2022, alegó que, de enero a diciembre (doce meses), en vez de recibir $12,000.00, según pactado, recibió solo $7,500.00.

Además, el Vendedor alegó que, "el día del cierre", le había prestado $330.00 a los Compradores "para la escritura", cuantía que estos no le han reembolsado. Según lo alegado, el incumplimiento de los Compradores le ha causado al Vendedor daños estimados en $50,000.00.

El Vendedor solicitó la "resolución" del contrato, "de manera que la propiedad … revierta a la parte demandante, sin la obligación de devolver suma alguna a los demandados … pues [los Compradores] han tenido la posesión y el disfrute de la propiedad desde que se firmó la escritura". El Vendedor solicitó "el desalojo de cualquier persona que esté usando u ocupando la propiedad".

El Sr. Rivera contestó la Demanda. En lo pertinente, alegó que había realizado más pagos de los alegados por el Vendedor, aunque aceptó que había "incumplido con el pago de algunas mensualidades según fueron pactadas". Negó que hubiese tomado prestados $330.00 del Vendedor para los gastos de cierre de la transacción. Por su parte, la Sa. Martínez, al contestar la Demanda, añadió que, por haber el Vendedor seleccionado al notario, era a este a quien le correspondía el pago del gasto de cierre reclamado.

Todas las partes solicitaron la solución sumaria del caso. El Vendedor sostuvo, bajo juramento, a finales de diciembre de 2023, que solo había recibido de los Compradores lo alegado en la Demanda ($24,300.00). También se acompañó una declaración jurada, suscrita por quien sostuvo era la secretaria del notario, quien aseveró que, el día del cierre, las partes acordaron dividir por la mitad el "costo de honorarios y gastos", y que el Vendedor le prestaría a los Compradores la parte de ellos.

Por su parte, el Sr. Rivera, mediante declaración jurada de diciembre de 2023, aseveró que le había realizado pagos al Vendedor que "sobrepasan la suma de $24,300.00". Plantearon los Compradores que (i) el Vendedor no había solicitado el cobro de lo adeudado; (ii) como cuestión de derecho, el Vendedor no tiene derecho a resolver el Contrato; y (iii) que no había controversia sobre el hecho de que fue el Vendedor quien escogió al notario, por lo cual, según dispuesto por ley, le correspondía a este el pago del gasto de cierre reclamado.

Resaltamos que los Compradores arguyeron que, al no haberse brindado una garantía hipotecaria, el Vendedor no podía solicitar la resolución del acuerdo, pues este asumió el riesgo de vender la Propiedad a plazos, sin colateral ni garantía alguna.

Mediante una *Sentencia Sumaria* notificada el 5 de febrero de 2024 (la "Sentencia"), el TPI desestimó la Demanda. El TPI determinó que los Compradores habían "realizado pagos" al Vendedor "que sobrepasan" $24,300.00.

El TPI razonó que (i) el Vendedor no solicitó en la Demanda que se le pagara el dinero adeudado; (ii) no se pactó garantía real ni se estableció una cláusula sobre las consecuencias de un incumplimiento por los Compradores de su obligación de pago; y (iii) el Vendedor escogió al notario y no constaba en documento alguno un acuerdo sobre dividir por partes iguales el gasto de cierre.

En particular, el TPI concluyó que, como las "partes no ... estableci[eron] ningún tipo de cláusula que estableciera las consecuencias a ser sufridas por el demandado en caso de incumplimiento contractual y la manera en cómo la parte demandante pudiera ser resarcida por la parte demandada[,] no puede" el tribunal establecer "cláusulas y pactos que no fueron acordados ....". El TPI afirmó que, "por ejemplo, la escritura de compraventa no contiene una cláusula resolutoria expresa, o de retroventa o de reserva de propiedad." El TPI determinó que el Vendedor no "tiene derecho a que se le conceda la restitución o devolución del inmueble ya que este no es su propietario y en el contrato no pactó cláusula alguna que le concediera ese derecho."

El 8 de febrero, el Vendedor solicitó la reconsideración de la Sentencia. Resaltó que no había prueba que sostuviera que los Compradores habían realizados pagos en exceso de lo alegado y afirmado bajo juramento por él; que tenía la facultad de resolver el contrato bajo lo dispuesto en el Artículo 1255 del Código civil; que, de no proceder la resolución del contrato, debió ordenarse a los Compradores a satisfacer lo adeudado; y que, según evidenciado por una declaración jurada de una empleada del notario, sí hubo un acuerdo entre las partes en torno a dividir por la mitad los gastos de cierre en controversia.

Luego de que los Compradores se opusieran a la moción de reconsideración, el TPI, mediante una Resolución notificada el 22 de febrero, denegó la referida moción.

Inconforme, el 21 de marzo, el Vendedor presentó la apelación que nos ocupa. Cada uno de los Compradores, en alegatos en oposición, reprodujeron lo planteado ante el TPI[1]. Resolvemos.

---

[1] Mediante moción de 17 de abril, la demandada, Sa. Martínez Maldonado, solicitó que se le relevara de cancelar aranceles, pues su abogado fue designado de oficio. Hemos determinado declarar con lugar dicha solicitud.

II.

El mecanismo de sentencia sumaria procura, ante todo, aligerar la tramitación de aquellos casos en los cuales no existe una controversia de hechos real y sustancial que exija la celebración de un juicio en su fondo. Véase *Rodríguez García v. Univ. Carlos Albizu*, 200 DPR 929 (2018); *Ramos Pérez v. Univisión*, 178 DPR 200 (2010). La Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36, rige el proceso mediante el cual una parte puede solicitar al tribunal que dicte sentencia sumaria a su favor.

Cuando cualquier parte solicite que el pleito sea resuelto por la vía sumaria, deberá demostrar "la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación". 32 LPRA Ap. V. R. 36.1 y 36.2. La Regla 36.3 de las de Procedimiento Civil, *supra,* detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3.

Presentada una solicitud de sentencia sumaria, la parte que se opone a la concesión de la misma también deberá cumplir con ciertos requisitos preceptuados en la referida regla y deberá argumentar el derecho aplicable a la controversia, ya sea para que el pleito no sea resuelto por la vía sumaria, o para que se dicte sentencia sumaria a su favor. La sentencia sumaria "puede dictarse a favor o en contra del promovente, según proceda en derecho". *Rodríguez García*, 200 DPR a las págs. 940-941; *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 575, (1997).

El criterio rector al momento de considerar la procedencia de un dictamen sumario es que no haya controversia sobre los hechos esenciales y pertinentes, según alegados por las partes en sus respectivas solicitudes y/o oposiciones, y que sólo reste aplicar el derecho. Véanse *Rodríguez García*, 200 DPR a la pág. 941; *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 661 (2017); *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 594-595 (2013).

III.

Concluimos que el TPI erró al disponer de la Demanda por la vía sumaria. Veamos.

La única interpretación razonable del texto del Contrato es que los Compradores se obligaron a satisfacer el balance del precio ($45,000.00) en 45 plazos mensuales de $1,000.00, y que dichos pagos comenzarían en mayo de 2021. Esta conclusión se fortalece al tomar en consideración la conducta posterior de las partes, pues los Compradores en efecto realizaron un primer pago en mayo de 2021.

A la fecha en que las partes solicitaron la resolución sumaria del caso (diciembre de 2023), se suponía que los Compradores ya hubiesen satisfecho $32,000.00 del precio pactado. Sobre cuánto había sido, en efecto, satisfecho, existe controversia. Ambas partes coinciden en que los Compradores habían pagado, al menos

$24,300.00. Sin embargo, el Vendedor afirmó, bajo juramento, que no se había satisfecho un centavo adicional, mientras, bajo juramento, uno de los Compradores afirmó que sí había realizado pagos adicionales.

Por tanto, erró el TPI al determinar, como hecho "incontrovertido", que los Compradores habían pagado en exceso de los $24,300.00 alegados por el Vendedor. El récord no permite conclusión alguna al respecto, pues lo único que contiene son alegaciones juramentadas que son contradictorias en cuanto a este asunto.

También erró el TPI al concluir que, como cuestión de derecho, no estaría disponible para el Vendedor el remedio de la resolución de contrato. La norma es que, ante un contrato con prestaciones recíprocas, como el que nos ocupa, cualquier parte puede solicitar la resolución del contrato, y la devolución de las prestaciones, si se alega y prueba el incumplimiento sustancial de la otra parte con sus obligaciones bajo el contrato, entre otros requisitos dispuestos por ley. 31 LPRA sec. 9823. En este caso, como el récord no permite en estos momentos determinar cuánto han pagado los Compradores, no es posible adjudicar, en esta etapa, si el Vendedor podría tener derecho a este remedio.

Por último, y contrario a lo concluido por el TPI, aun si la resolución del contrato no procediera, si se demostrase que los Compradores adeudan dinero al Vendedor, procedería que dicho foro condene a los Compradores al pago de lo adeudado, aun si el Vendedor no lo hubiese solicitado en la Demanda. Adviértase que el TPI debe, mientras sea viable, conceder el remedio que resulte apropiado aun cuando el mismo no haya sido solicitado inicialmente por la parte demandante.

Por último, en relación con la controversia sobre los $330.00 reclamados por el Vendedor, tampoco el récord le permitía al TPI

adjudicar este asunto.  Ello porque el Vendedor alegó, sustentado por una declaración jurada, que las partes acordaron dividir dicho gasto por la mitad.  Por tanto, no podía concluirse, como asunto incontrovertido, que este alegado pacto no existió.  Adviértase que, si se demostrase la existencia de este pacto, el mismo válidamente suplantaría la regla general según la cual un vendedor asume la totalidad de dicho costo cuando dicha parte escoge el notario, como ocurrió aquí.  31 LPRA sec. 9991.

IV.

Por los fundamentos antes expuestos, se revoca la sentencia apelada y se devuelve el caso al Tribunal de Primera Instancia para trámites ulteriores compatibles con lo aquí resuelto y expuesto, incluida la celebración de la correspondiente vista en su fondo.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones