ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (IV)

| | | |
|---|---|---|
| MUÑEKI II APARTMENTS y OTROS<br><br>Apelada<br><br>v.<br><br>TRIPLE-S PROPIEDAD, INC.<br><br>Apelante | KLAN202400199 | ***Apelación***<br>procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil Núm.: AG2019CV01235<br><br>Sobre: Incumplimiento de Contrato de Seguros y Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez

Rivera Pérez, Jueza ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de abril de 2024.

Comparece Triple-S Propiedad, Inc. (en adelante, Triple-S o parte demandada-apelante) mediante un recurso de *Apelación* y nos solicita la revisión de la *Sentencia Parcial* dictada el 8 de enero de 2024 y notificada el 10 de enero de 2024.[1] Mediante este dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria Parcial* presentada el 30 de diciembre de 2022 por Muñeki II Apartments, Lorelei Associates, L.P., Albors Property Corp., Attenure Holdings Trust 11, y HRH Property Holdings LLC (en adelante, parte demandante-apelada). En consecuencia, se ordenó a Triple-S pagarle a la parte demandante-apelada $12,163.18.

Por los fundamentos que expondremos, se confirma la *Sentencia Parcial* apelada.

---
[1] Anejos del escrito de *Apelación* a las págs. 389-399.

Número Identificador

SEN2024 _____

**I**

El 5 de septiembre de 2019, la parte demandante-apelada presentó una *Demanda* sobre sentencia declaratoria, incumplimiento de contrato, y daños en contra de Triple-S.[2] Luego, el 19 de septiembre de 2019, presentó una *Demanda Enmendada.*[3] Según se alegó, Muñeki II Apartments, Lorelei Associates, L.P., Albors Property Corp. eran dueños y administradores del complejo de apartamentos Muñeki II Apartments localizado en el Barrio Caimital Bajo del Municipio de Aguadilla, el cual sufrió daños por causa del Huracán María.[4] A la fecha del paso del evento atmosférico, la propiedad estaba asegurada por una póliza de seguro propiedad comercial expedida por Triple-S contra pérdidas causadas por huracán (Póliza Núm. 30-CP-81087372- 1), por lo que la parte demandante-apelada procedió a someter una reclamación ante dicha compañía aseguradora solicitando una indemnización por los daños sufridos.

En la demanda, la parte demandante-apelada alegó en resumen que Triple-S incumplió con los términos y condiciones de la póliza de seguros, y violó el *"Código de Seguros de Puerto Rico"*, *infra,* al evaluar y resolver su reclamación. Añadió que, ante la

---

[2] Véase, entrada Núm. 1 del expediente digital del Caso Núm. AG2019CV01235 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[3] Véase, Apéndice de la *Apelación,* págs. 1-13.

[4] Con respecto a los daños y el valor estimado, la parte demandante-apelada alegó lo siguiente:

> "43. El viento, el agua y los escombros del Huracán María causaron daños sustanciales a la Propiedad Asegurada, incluyendo, pero sin limitarse a: ventanas, puertas, puertas corredizas, paredes, techos, paneles de los armarios, filtraciones de agua, pintura, artefactos de iluminarias, grietas en las paredes, bombillas, barandas de los balcones, zócalos, cercas y portones.
> 44. El costo para reemplazar los elementos destruidos de la propiedad y reparar los otros daños sufridos por la Propiedad Asegurada causados por el Huracán María será probado en el juicio, pero su estimado es de aproximadamente $4,237,260.82.
> 45. Por consiguiente, el Demandante incurrirá en gastos significativos para reparar y remplazar el daño sustancial que le causó el Huracán María a la Propiedad Asegurada y para tratar de revertirla a su estado pre-María.
> 46. Bajo los términos de la Póliza de Seguro, el Demandado adeuda, y Muñeki II tiene derecho a una suma a ser probada en el juicio, pero estimada en aproximadamente $4,237,260.82, menos cualquier deducible y las cantidades adelantadas por Triple-S."
> Véase, Apéndice de la *Apelación,* pág. 7.

conducta dolosa y de mala fe de Triple-S, que impidió arreglar y corregir los daños causados por el huracán María durante dos (2) años, se vio obligada a entrar en acuerdos de cesión con Attenure Holdings Trust 11 y HRH Property Holdings LLC para poder estar en condiciones económicas para mitigar sus daños y proceder a reparar la propiedad en cuestión.

La parte demandante-apelada solicitó como remedio, entre otras cosas, que se dictara una sentencia declarando que la póliza de seguros suscrita entre las partes cubría los daños que sufrió la propiedad por causa del Huracán María; y que se ordenara a Triple-S al pago de una suma estimada en $4,237,260.82 por concepto de indemnización, más gastos, y honorarios de abogado. El 19 de septiembre de 2019, la parte demandante-apelada presentó una *Demanda Enmendada*.[5]

El 28 de septiembre de 2021, Triple-S presentó su *Contestación a Demanda Enmendada y Reconvención*, en la que negó la mayoría de las alegaciones hechas en su contra y levantó varias defensas afirmativas.[6]

Luego de varios trámites procesales y culminado el proceso de descubrimiento de prueba, la parte demandante-apelada presentó el 30 de diciembre de 2022 una *Moción de Sentencia Sumaria Parcial*.[7] En la moción, la parte demandante-apelada alegó que Triple-S le había enviado una carta con fecha del 28 de noviembre de 2022 y un ajuste de un informe pericial rendido por la compañía Haag's Construction Consulting Co.,[8] en relación con la reclamación, en el cual se disponía que los daños cubiertos bajo la póliza de seguro ascendían a $12,163.18, luego de descontar los

---

[5] Véase, Apéndice de la *Apelación*, págs. 1-13.

[6] Véase, Apéndice de la *Apelación*, págs. 14-43.

[7] Véase, Apéndice de la *Apelación*, págs. 44-64. En esa misma fecha, la parte demandante-apelada presentó una *"Moción Suplementando Moción de Sentencia Sumaria"* y, una *"Segunda Moción Suplementando Moción de Sentencia Sumaria"*. Véase, Apéndice de la *Apelación*, págs. 65-66 y 241-242.

[8] En el informe pericial rendido por la compañía Haag's Construction Consulting Co., los daños a la propiedad se estimaban en $388,299.46.

deducibles y exclusiones aplicables. Además, alegó y argumentó lo siguiente:

> "[e]l Ajuste fue sometido por la Aseguradora **<u>fuera</u>** [del] período de noventa (90) días establecido por el art. 27.162 del Código de Seguros para que una aseguradora razonablemente <u>investigue, ajuste y resuelva</u> una reclamación – término que no queda suspendido por haberse entablado la presente reclamación judicial"; "[a] la fecha de esta moción, habiendo pasado varios años desde que se sometió la reclamación y culminado el descubrimiento de prueba en este caso, la Aseguradora **<u>no</u>** ha cuestionado la validez de las cuantías en el Ajuste ni tampoco ha emitido un pago por dicha cuantía"; y que, [a]nte tal inacción, es forzoso concluir que la Aseguradora ha adoptado como ciertas y determinadas las cuantías del Ajuste. Ello, pues, el Ajuste es "**producto de una investigación adecuada y un análisis detenido**" por parte de la Aseguradora, y constituye un "**informe objetivo del asegurador en cuanto a la procedencia de la reclamación y la existencia de cubierta bajo la póliza**". *Carpets & Rugs v. Tropical Reps*, 175 D.P.R. 615, 635 (2009). [...] Por ende, el Ajuste "**constituye la postura institucional del asegurador frente a la reclamación de su asegurado**", y a la Demandada "**no le es permisible retractarse**" de las cuantías estimadas "**salvo fraude de parte del reclamante u otras circunstancias extraordinarias que al asegurador le era imposible descubrir a pesar de una investigación diligente**". *Id.*
>
> Es decir, independientemente del resultado de este litigio, y aun cuando la Aseguradora prevalezca en cualquier otro asunto que pudiera levantar, el monto a pagar nunca podrá ser menor de $12,163.18 porque esa es justamente la cuantía de los daños según el Ajuste. Este resultado es cónsono con la Regla XVLII, Artículo 7 del Código de Seguros de Puerto Rico (Reglamento 2080)".[9] (Citas y énfasis en el original).

La parte demandante-apelada solicitó que se dictara una sentencia sumaria parcial ordenándole a Triple-S el pago de dicha cantidad por entender que se trataba de una "cantidad líquida, exigible, comprobada por el ajuste de la propia Aseguradora y, por ende, no sujeta a controversia"; y "sobre la cual no le es permitido retractarse a esta fecha conforme lo resuelto en *Carpets & Rugs v. Tropical Reps.*, *supra*".[10]

---

[9] Véase, Apéndice de la *Apelación*, pág. 45.
[10] Véase, Apéndice de la *Apelación*, pág. 44-45.

El 23 de enero de 2023, Triple-S presentó una *Oposición a Moción Solicitando Sentencia Sumaria Parcial*.[11] En su moción, Triple-S se opuso a la solicitud de la parte demandante-apelada para que se dictara sentencia sumaria parcial ordenando el pago del ajuste notificado alegando en esencia que no estaban presentes los requisitos legales necesarios para que procediera en derecho el pago parcial de la reclamación ante la existencia de controversias relacionadas a las partidas reclamadas bajo la póliza.

Entre otras cosas, Triple-S alegó que no había culminado el proceso de investigación y ajuste de la reclamación; que no estaban presentes los elementos esenciales para que una deuda se considerara líquida y exigible; que la reclamación aún podía ser denegada ante una violación a las disposiciones de la póliza de seguro o el *"Código de Seguros de Puerto Rico", infra*; que la parte demandante-apelada estaba basando su solicitud en una interpretación incorrecta de lo resuelto en *Carpets & Rugs v. Tropical Reps*, 175 DPR 615 (2009), y *Feliciano Aguayo v. MAPFRE*, 207 DPR 138 (2021), los cuales eran distinguibles del presente; que "un pre-ajuste que se presenta como parte del descubrimiento de prueba en un pleito judicial, *por orden del tribunal,* no se ubica bajo ninguno de los mecanismos que el Código de Seguros reconoce para resolver una reclamación total o parcialmente"; y que, "siendo el pre-ajuste judicial un estimado que una de las partes (aseguradora) presenta, que está sujeta a modificaciones, y que fue rechazada por la otra parte, la suma notificada carece de los dos elementos esenciales de una deuda líquida y exigible".

El 8 de enero de 2024, notificada el 10 de enero de 2024, el TPI dictó la *Sentencia Parcial* apelada, mediante la cual declaró Ha Lugar la *Moción de Sentencia Sumaria Parcial* presentada el 30 de

---

[11] Véase, Apéndice de la *Apelación*, págs. 295-319.

diciembre de 2022.[12] En consecuencia, se ordenó a Triple-S pagarle a la parte demandante-apelada $12,163.18. En su dictamen, el TPI formuló las determinaciones de hechos siguientes:

**"HECHOS ESENCIALES Y PERTINENTES SOBRE LOS CUALES NO HAY CONTROVERSIA SUSTANCIAL:**

1. Lorelei Associates, L.P., Albors Property Corporation y Albors Development Corporation tenían una póliza de seguro suscrita con Triple-S, núm. 30-CP-81087372-1.

[2.] La póliza núm. 30-CP-81087372-1 estuvo vigente durante el paso del huracán María por Puerto Rico, el 20 de septiembre de 2017. En específico, estuvo vigente desde el 21 de abril de 2017 hasta el 21 de abril de 2018.

[3.] La propiedad asegurada es un complejo de apartamentos de alquiler que opera bajo el programa Sección 8. El complejo Muñeki II Apartments está localizado en la Carr. 2 km. 126.1, Bo. Caimital Bajo, calle Ópalo Final, sector Villa Alegría, Aguadilla, P.R. 00603.

[4.] El 31 de octubre de 2017, Muñeki II sometió reclamaciones a Triple-S solicitando cubierta bajo la póliza.

[5.] Muñeki II presentó a Triple-S estimados de los daños ocasionados en la propiedad.

[6.] La propiedad asegurada fue inspeccionada por Triple S.

[7.] El 28 de noviembre de 2022, Triple-S notificó por correo electrónico una misiva en la cual se incluyó un pre-ajuste realizado por Rafael Betancourt, el 20 de noviembre de 2022.

[8.] En la referida misiva, se dispuso lo siguiente:

Triple-S Propiedad (TSP) clarifies and asserts that it has not finalized its investigation or adjustment of the instant claim. TSP is still actively investigating the claim, claim submission, estimates submitted and conducting discovery in the litigation, which is still ongoing. As such, TSP is not in a position to issue its adjustment and/or institutional position with regard to the claim and estimates submitted by the Insured. TSP is hereby notifying a preliminary and interim pre adjustment only for purposes of discussion and settlement negotiations. Therefore, TSP is not offering to make any payment to the Insured, because no payment is proper at this juncture. Again, the enclosed pre-adjustment does not constitute, and cannot and should not be interpreted as, TSP's final and formal adjustment nor its official position as to the referenced claim.

---

[12] Véase, Apéndice de la *Apelación*, págs. 391-399.

That being said, enclosed you will find TSP's pre-adjustment of Haag's Construction Consulting Co., (HAAG) Expert Report in connection with the referenced claim.

[9.] No obstante, lo anterior, HAAG Construction Consulting Co., estimó en el informe de ajuste preparado que los daños sufridos por la propiedad asegurada ascendían a $12,163.18, luego de aplicados los deducibles.

[10.] La aseguradora no ha efectuado pago parcial a favor de la parte demandante.

**HECHOS ESENCIALES Y PERTINENTES QUE ESTÁN REALMENTE Y DE BUENA FE CONTROVERTIDOS:**

1. La póliza de seguro define el termino causa de perdida cubierta ("Covered Causes of Loss") como cualquier pérdida física directa, excepto que la pérdida esté excluida o limitada por la póliza ("direct physical loss unless the loss is excluded or limited in this policy").

2. No hay exclusión o limitación en la póliza específica para daños ocasionados por un huracán o por vientos y agua asociados a un huracán.

3. El 15 de febrero de 2021, el perito de la parte demandante estimó que los daños ascienden a $1,659,498.76, sujeto a los deducibles aplicables."

A base de estas determinaciones, el TPI concluyó y resolvió lo siguiente:

"En primer lugar, determinamos que el informe preparado por la parte demandada se tomará en consideración para propósitos de atender la moción de sentencia sumaria, pues basta que los hechos de la antedicha moción se establezcan mediante prueba admisible en evidencia. Véase, regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V. El referido informe, así como la presentación del perito de la parte demandada, fue excluida para propósitos del juicio por razón de que la parte demandada no cumplió con el descubrimiento de prueba dentro del término provisto para ello. Sin embargo, esta prueba no fue excluida para otros propósitos. En segundo lugar, determinamos que la suma reclamada por la parte demandante se compone de una parte líquida, correspondiente al ajuste u oferta de la aseguradora, y otra ilíquida, sobre la cual existe controversia.

El estimado de daños que Triple-S envió a la parte demandante incluyó el ajuste correspondiente a la propiedad asegurada, según la información que la aseguradora tenía hasta ese momento. El informe de ajuste o estimado de daños fue por la cantidad de $12,163.18. Por consiguiente, esa suma es una cuantía de dinero cierta y determinada que no está sujeta a alguna causa de nulidad y representa la parte líquida

de la reclamación. Contrario a lo que pretende la parte demandada, el proceso de ajuste y de manejo de la reclamación no puede eludirse con cartas sobre reservas de derecho y/o "pre-[ajustes]". Como adelantamos previamente, corresponde a la aseguradora cumplir con las disposiciones del Código de Seguros al investigar y hacer el informe de ajuste o estimado de daños de la reclamación dentro del término provisto para esto. Por lo cual, la parte demandada se ve impedida de impugnar u ofrecer una cantidad menor a la que reconoció en el estimado de los daños que notificó, dado que fue esta misma quien concluyó que esa era la cantidad a la cual tenía derecho la parte demandante.

Por otro lado, el informe de ajuste o estimado de daños es equivalente a una oferta de transacción o postura de negociación. *Carpets & Rugs v. Tropical Reps, supra,* pág. 635. En consecuencia, la parte demandada tampoco puede ahora denegar partidas que en su informe de ajuste o estimado de daños consideró procedentes. *Carpets & Rugs v. Tropical Reps, supra,* pág. 636. En nuestro ordenamiento, no es permisible que un asegurador, ante un reclamo judicial de su asegurado, deniegue partidas que en su ajuste inicial entendió procedentes, en ausencia de fraude u otras circunstancias extraordinarias que lo ameriten. *Carpets & Rugs v. Tropical Reps, supra,* pág. 636. Por consiguiente, el estimado de daños se considera parte de la obligación de Triple-S de resolver finalmente la reclamación de la parte demandante. Véase, *Carpets & Rugs v. Tropical Reps, supra,* pág. 639.

En atención a los fundamentos antes consignados, se declara **HA LUGAR** la moción de sentencia sumaria parcial presentada por la parte demandante, el 30 de diciembre de 2022. Se ordena a la parte demandada a satisfacer a favor de la parte demandante la suma de $12,163.18." (Énfasis en el original).

El 24 de enero de 2024, Triple-S presentó una *Moción de Reconsideración de "Sentencia Parcial" (SUMAC NÚM. 130),*[13] a la cual se opuso la parte demandante-apelada mediante una *Oposición a Moción de Reconsideración de "Sentencia Parcial" (SUMAC NÚM. 130)* presentada el 14 de febrero de 2024.[14]

El 21 de febrero de 2024, el TPI emitió y notificó *Orden* declarando No Ha Lugar la *Moción de Reconsideración.*[15]

---

[13] Véase, Apéndice de la *Apelación,* págs. 400-407.
[14] Véase, Apéndice de la *Apelación,* págs. 408-418.
[15] Véase, Apéndice de la *Apelación,* págs. 419-420.

Inconforme con la determinación del TPI, Triple-S acudió ante nos mediante el presente recurso de *Apelación*, en el cual señala la comisión de los errores siguientes:

> ERRÓ EL TPI AL ORDENAR EL PAGO PARCIAL DEL AJUSTE, A PESAR DE QUE NO SE VERIFICA NINGUNA DE LAS INSTANCIAS PERMITIDAS POR LA LEY 243-2018 PARA QUE PROCEDA ESTE TIPO DE PAGO O ADELANTO. TAMPOCO PROCEDE BAJO LOS TÉRMINOS CLAROS DE LA PÓLIZA.
>
> ERRÓ EL TPI AL CONCLUIR QUE LA CANTIDAD NOTIFICADA EN EL AJUSTE, LA CUAL NO FUE ACOGIDA POR LA PARTE ASEGURADA, ES UNA DEUDA LÍQUIDA Y EXIGIBLE QUE DEBE PAGARSE INMEDIATAMENTE.
>
> ERRÓ EL TPI EN SU INTERPRETACIÓN DEL CASO DE *CARPETS & RUGS V. TROPICAL REPS AND DISTRIBUTORS*, 175 DPR 615, 635 (2009).
>
> ERRÓ EL TPI AL CONCEDER LA MOCIÓN DE SENTENCIA SUMARIA PRESENTADA POR MUÑEKI, AÚN CUANDO ESTA NO CUMPLE CON LA REGLA 36.3(A)(3) DE PROCEDIMIENTO CIVIL, 32 LPRA AP. V R. 36.3(A)(3), NI CON LA REGLA 42.3 DE PROCEDIMIENTO CIVIL, 32 LPRA AP. V R. 42.3.

El 27 de marzo de 2024, la parte demandante-apelada presentó *Alegato de la Parte Apelada*.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, regula todo lo relacionado a la moción de sentencia sumaria. Dicho mecanismo procesal es utilizado en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesaria en la medida que solo resta por dirimir determinadas controversias de derecho. *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).

El propósito que se persigue con el mecanismo de la sentencia sumaria es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 335; *León Torres v. Rivera Lebrón*, supra, pág. 43. Para ello, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece cual será el contenido y los requisitos de forma que deberán observarse tanto en la solicitud de sentencia sumaria que inste la parte promovente, como en la oposición que pueda presentar la parte promovida. Véase, también, *León Torres v. Rivera Lebrón*, supra, pág. 43. Al respecto, la Regla 36.3 (e) de Procedimiento Civil, *supra*, establece que la sentencia sumaria solicitada será dictada inmediatamente:

> "si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente." Véase, además, *Rodríguez García v. UCA*, supra; *Roldán Flores v. M. Cuebas [et al.,* 199 DPR 664 (2018)].

Como regla general, una moción de sentencia sumaria no procederá cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, págs. 335-336; *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011). De igual forma, es también norma reiterada que el mecanismo de sentencia sumaria no es el adecuado cuando existen controversias de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia. *Velázquez Ortiz v. Mun. De Humacao*, 197 DPR 656 (2017); *Const. José Carro v. Mun. Dorado,*

186 DPR 113, 129 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010).

La Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, regula que ocurre cuando no se dicta una sentencia sumaria en su totalidad. Esta Regla dispone lo siguiente:

> "Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.
>
> A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno." Regla 36.4 de Procedimiento Civil, *supra*.

Es importante puntualizar que, al momento de atender una solicitud de revisión de sentencia sumaria, los foros apelativos estamos llamados a "examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias" pautadas en las Reglas de Procedimiento Civil. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 338 citando a *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). En ese proceder, y de encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar si el foro primario aplicó correctamente el Derecho. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

**B.**

En nuestra jurisdicción, los contratos de seguro han sido revestidos de un alto interés público por su importancia,

complejidad, y efecto en la economía y la sociedad, razón por la cual esta industria se encuentra extensamente reglamentada mediante su cuerpo rector, la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como *Código de Seguros de Puerto Rico*, 26 LPRA sec. 101 *et seq.*, (en adelante, Código de Seguros). Véase, *Consejo Titulares v. Mapfre*, 208 DPR 716 (2022); *Maderas Tratadas v. Sun Alliance, et al.*, 185 DPR 880, 896 (2012). En materia de seguros las disposiciones del Código Civil de Puerto Rico tienen una función supletoria, por tratarse de una materia reglamentada por una ley especial. *San Luis Center Apts. et al. v. Triple-S*, 208 DPR 824, 834 (2022).

El Artículo 1.020 del Código de Seguros, *supra*, define el seguro como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". En este tipo de contrato el asegurador asume determinados riesgos a cambio del cobro de una prima o cuota, en virtud de la cual se obliga a responder por la carga económica que recaiga sobre el asegurado, en el caso de que ocurra algún evento especificado en el contrato. *Feliciano Aguayo v. MAPFRE,* 207 DPR 138, 148-149 (2021); *ECP Incorporated v. OCS*, 205 DPR 268 (2020); *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1023 (2017); *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 384 (2009). Así, vemos que el contrato de seguro tiene el propósito de indemnizar y proteger al asegurado en caso de producirse el suceso incierto previsto. *Íd.*, pág. 149.

En cuanto a los métodos para resolver una reclamación, el Artículo 21.163 del Código de Seguros, *supra*, dispone lo siguiente:

"Los siguientes actos constituyen resolver una reclamación:

(1) El pago total de la reclamación.

(2) La denegación escrita y debidamente fundamentada

de la reclamación.

(3) El cierre de la reclamación por inactividad del reclamante, cuando el reclamante no coopere o no entregue la información necesaria para que el asegurador pueda ajustar la reclamación. [...]".

Existen otros métodos para resolver una reclamación, como lo es a través de la notificación de una oferta razonable. Véase, Carta Normativa Núm.: N-I-4-52-2004 emitida por el Comisionado de Seguros el 26 de abril de 2004; *Carpets & Rugs v. Tropical Reps*, supra. Al respecto, en *Carpets & Rugs v. Tropical Reps*, supra, pág. 635-636, el Tribunal Supremo explicó lo siguiente:

> "Cuando el asegurador escoge cumplir con su obligación mediante el envío de una oferta razonable al asegurado, dicha oferta constituye el estimado del asegurador de los daños sufridos por su asegurado. Al emitir dicho documento, el asegurador está informando que después de una investigación diligente, un análisis de los hechos que dieron lugar a la pérdida, un examen de la póliza y sus exclusiones y un estudio realizado por el ajustador de reclamaciones del asegurador, se concluye que la póliza cubre ciertos daños reclamados por el asegurado, en las cantidades incluidas en la comunicación. Después de todo, al analizar una reclamación, los aseguradores tienen una obligación de llevar a cabo un ajuste rápido, justo, equitativo y de buena fe. Véase art. 27.161 (6) del Código de Seguros, 26 L.P.R.A. sec. 2716a.
>
> Siendo este documento emitido por el asegurador el producto de una investigación adecuada y un análisis detenido, éste constituye la postura institucional del asegurador frente a la reclamación de su asegurado. En dicho documento no existen concesiones del asegurador hacia su asegurado, pues se trata de un informe objetivo del asegurador en cuanto a la procedencia de la reclamación y la existencia de cubierta bajo la póliza.
>
> Es por esto que a un asegurador no le es permisible retractarse del ajuste que como obligación envía a su asegurado, salvo fraude de parte del reclamante u otras circunstancias extraordinarias que al asegurador le era imposible descubrir a pesar de una investigación diligente. De permitirse que un asegurador se retracte de la comunicación que le obliga a emitir el Código de Seguros, se circunvalaría el término máximo en el cual un asegurador está obligado a investigar y resolver una reclamación, pues significaría que la resolución no sería final. Dicha práctica causaría incertidumbre en los asegurados, pues el asegurador podría cumplir artificiosamente con el término que le impone el Código de Seguros para evitar sanciones por parte del Comisionado y luego desdecirse de los daños estimados originalmente, obligando al litigio de partidas que

encontró procedentes inicialmente." Véase, además, *Feliciano Aguayo v. MAPFRE Panamerican Ins. Co.*, supra, pág. 181.

En cuanto a los pagos parciales o en adelantos de la reclamación ante un evento catastrófico, el Artículo 27.166 del Código de Seguros, *supra,* dispone lo siguiente:

"Ante un estado de emergencia decretado por el Gobernador de Puerto Rico, la Oficina del Comisionado de Seguros estará facultada para ordenar a los aseguradores de seguros de propiedad a emitir pagos parciales o en adelantos al asegurado o reclamante, en cuanto a una o más partidas de las cuales no exista controversia, sin necesidad de esperar a la resolución final de la totalidad de la reclamación. En esos casos, los aseguradores cumplirán con los siguientes requisitos:

(a) Cuando entre el asegurado o reclamante y asegurador no exista controversia sobre una o más partidas de la reclamación para las cuales el asegurado haya provisto al asegurador la documentación requerida en la póliza, el asegurador vendrá obligado a emitir el pago correspondiente a la partida o las partidas de la reclamación en que no exista controversia, independientemente de las otras partidas de la reclamación en que exista controversia. El pago deberá ser efectuado no más tarde de diez (10) días calendario, a partir de la fecha que el asegurado o reclamante haya notificado al asegurador, por escrito, sobre la aceptación de la oferta de pago parcial o en adelanto. El pago será por la cantidad neta, luego del descuento aplicable por concepto de deducible o coaseguro estipulado en la póliza de dichas partidas.

(b) En toda oferta de pago parcial o en adelanto de la reclamación, el asegurador identificará de manera clara y conspicua que la oferta es un "Pago Parcial o En Adelanto de la Reclamación", incluyendo un informe por escrito que identifique la cubierta(s) para lo cual se hace la oferta y un desglose de la cuantía correspondiente a cada una de las partidas objeto de la oferta.

(c) Cualquier oferta de pago de una reclamación en la cual no se identifique la cubierta bajo la cual se realiza, o deje de desglosar las partidas y cuantía de daños o pérdidas a la cual corresponde, incluyendo la cantidad aplicable por concepto de deducible o coaseguro estipulado en la póliza, se considerará una práctica desleal en el ajuste de reclamación, sujeto a las penalidades del Artículo 27.260 de este Código.

(d) La aceptación de un pago parcial o en adelanto por el asegurado reclamante no constituirá, ni podrá ser interpretado, como un pago en finiquito o renuncia a cualquier derecho o defensa que éste pueda tener sobre los otros asuntos de la reclamación en controversia que no estén contenidos expresamente en la declaración de oferta de pago parcial o en adelanto.

> (e) El pago parcial o en adelanto no constituirá una resolución final de la totalidad de la reclamación con arreglo a los Artículos 27.162 y 27.163 de este Código."

El citado Artículo 27.166 del Código de Seguros, *supra*, fue incorporado mediante la Ley Núm. 243-2018 aprobada como consecuencia del paso del Huracán María para manejar las reclamaciones pendientes y ordenar a los aseguradores de la propiedad a "emitir pagos parciales o en adelantos al asegurado o reclamante luego de un evento catastrófico de las partidas que no estén en controversia y para otros asuntos relacionados". *Feliciano Aguayo v. MAPFRE,* supra, pág. 155, citando la Exposición de Motivos de la Ley Núm. 243-2018. Lo anterior, con el propósito de "estimular pagos a los asegurados o reclamantes afectados para que puedan comenzar los arreglos para la reconstrucción o reparación de sus residencias y para iniciar la operación de los comercios, ayudando así a reactivar nuestra economía con mayor prontitud." *Íd.* Véase, además, Artículo 7 del Reglamento Núm. 2080 de la Oficina del Comisionado de Seguros del 6 de abril de 1976.

Tal principio también estaba estatuido en el Artículo 1123 del derogado Código Civil de 1930, 31 LPRA ant. sec. 3173, que, en lo pertinente, disponía que un acreedor no podía ser obligado —a menos que el contrato expresamente lo autorizara— a recibir las prestaciones de la obligación de forma parcial. *Feliciano Aguayo v. MAPFRE,* supra, págs. 155-156. Ahora bien, según lo establecía igual disposición, "cuando la deuda tuviere una parte líquida y otra ilíquida, podrá exigir el acreedor, y el deudor puede hacer el pago de la primera, sin esperar a que se liquide la segunda".[16]

---

[16] Véase, además, Artículo 1119 del Código Civil de 2020, 31 LPRA sec. 9143:
"El acreedor no puede ser compelido a recibir parcialmente las prestaciones en las que consiste la obligación, salvo cuando el contrato o la ley expresamente lo autorizan.

Sin embargo, si la deuda tiene una parte líquida y otra ilíquida, el acreedor puede exigir, y el deudor puede hacer el pago de la primera, sin esperar a que se liquide la segunda."

**III**

En su recurso de *Apelación,* Triple-S señala que erró el TPI "al ordenar el pago parcial del ajuste, a pesar de que no se verifica ninguna de las instancias permitidas por la Ley 243-2018 para que proceda este tipo de pago o adelanto" "[t]ampoco procede bajo los términos claros de la póliza"; y "al concluir que la cantidad notificada en el ajuste, la cual no fue acogida por la parte asegurada, es una deuda líquida y exigible que debe pagarse inmediatamente". Señala, además, que dicho foro erró "en su interpretación del caso de *Carpets & Rugs v. Tropical Reps and Distributors,* 175 DPR 615, 635 (2009)" y "al conceder la moción de sentencia sumaria presentada por Muñeki, a[u]n cuando esta no cumple con la regla 36.3(a)(3) de Procedimiento Civil[,] 32 LPRA Ap. V, R. 36.3(a)(3), ni con la regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3".

Examinada *de novo* la moción de sentencia sumaria parcial presentada por la parte demandante-apelada, así como la moción en oposición presentada por Triple-S, concluimos que las determinaciones de hechos formuladas por el TPI en el dictamen apelado encuentran apoyo en la prueba que obra en el expediente, por lo que las acogemos por referencia y las hacemos formar parte de nuestro dictamen.

En el presente caso, según reseñamos, Triple-S le notificó a la parte demandante-apelada un ajuste del estimado de los daños de su perito por la cantidad de $12,163.18, en el cual se concluyó que la póliza de seguro en cuestión cubría ciertos daños reclamados por el asegurado, en las cantidades según incluidas. El ajuste notificado por Triple-S identificaba las partidas incluidas en la póliza, así como el límite asegurado, y la cantidad que estaba dispuesta a pagar.

Ante el reconocimiento de Triple-S sobre la cubierta de los daños identificados en el ajuste notificado a la parte demandante-apelada, entendemos que procedía el pago como adelanto de la

reclamación. Por lo tanto, resolvemos que no erró el TPI al ordenar a Triple-S a efectuar el pago de aquellas partidas que en el ajuste notificado entendió que procedían.

De conformidad al derecho expuesto, al analizar una reclamación, los aseguradores tienen una obligación de llevar a cabo un ajuste rápido, justo, equitativo y de buena fe. *Carpets & Rugs v. Tropical Reps*, supra. Siendo este documento emitido por el asegurador el producto de una investigación adecuada y un análisis detenido, este constituye la postura institucional del asegurador frente a la reclamación de su asegurado. *Íd*. En dicho documento no existen concesiones del asegurador hacia su asegurado, pues se trata de un informe objetivo del asegurador en cuanto a la procedencia de la reclamación y la existencia de cubierta bajo la póliza. *Íd*. A un asegurador no le es permisible retractarse del ajuste que como obligación envía a su asegurado, salvo fraude de parte del reclamante u otras circunstancias extraordinarias que al asegurador le era imposible descubrir a pesar de una investigación diligente. *Íd*. Tampoco puede condicionar el pago a la falta de aceptación por parte del asegurado. *Íd*.

En el presente caso, una vez Triple-S reconoció la existencia de los daños cubiertos por la póliza y notificó el ajuste correspondiente, los $12,163.18 se convirtieron en una deuda líquida y exigible. Es importante aclarar que, aunque en el documento remitido Triple-S indicó que se trataba de un "pre-ajuste" e invocó reservas de derecho, en efecto el mismo constituyó un ajuste al palio del derecho aplicable. El pretender lo contrario sería un subterfugio para preterir la responsabilidad impuesta a la aseguradora en virtud de la póliza, el derecho aplicable, y lo resuelto en el caso de *Carpets & Rugs v. Tropical Reps*, supra. Lo anterior es cónsono con la rapidez, equidad y buena fe exigida a las aseguradoras en la resolución de las reclamaciones. A su vez, la

decisión del foro primario es compatible con el Artículo 7(d) del Reglamento Núm. 2080 del Código de Seguros, *supra*, que permite hacer el pago, independientemente de que exista una controversia en cuanto a otros aspectos de la reclamación.

En ese sentido, razonamos que nada impedía a Triple-S realizar el pago parcial por los daños reclamados, cuando luego de la investigación correspondiente determinó que procedían los mismos bajo la cubierta de la póliza. Además, lo aquí resuelto no supone la renuncia de las partes a continuar ventilando las demás alegaciones y defensas que están pendiente de adjudicación ante el foro primario.

Por todo lo anterior, concluimos que no erró el TPI al ordenarle a Triple-S a emitir el pago por $12,163.18 en concepto de pago parcial. Dicho pago procede en derecho, sin que ello constituya una resolución final de la totalidad de la reclamación.

**IV**

Por los fundamentos expuestos, se confirma la *Sentencia Parcial* apelada.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones