Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| PROGRESSIVE FINANCE INVESTMENT, CORP.<br><br>APELADA<br><br>v.<br><br>COMMERCIAL RENT MANAGEMENT<br><br>APELANTE | KLAN202400987 | *Apelación,* Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br><br>SJ2022CV10178<br><br>Sobre:<br><br>Cobro de Dinero, Ordinario |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

**Rivera Pérez, Jueza Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

Comparece ante este Tribunal la parte apelante, Commercial Rent Corporation (en adelante, Commercial Rent o parte apelante), mediante un recurso de apelación, solicitando la revisión de la *Sentencia* emitida el 2 de octubre de 2024 y notificada el 3 de octubre de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"). Dicha sentencia declaró *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por Progressive Finance & Investment Corp. (en adelante, Progressive o parte apelada). En consecuencia, el TPI ordenó a la parte apelante el pago de $11,980.95, correspondiente al principal, intereses acumulados y cargos por demora reclamados en la demanda, así como los intereses legales acumulados al tipo del 9.50%.

Por los fundamentos que se expondrán a continuación, confirmamos la sentencia apelada.

**I**

El caso tiene origen en la demanda presentada por Progressive el 21 de noviembre de 2022, bajo el procedimiento sumario establecido en la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V, R. 60. Según se alegó, las partes suscribieron un *Contrato de Venta al Por Menor a Plazos*, mediante el cual Progressive otorgó un préstamo a Commercial Rent con el propósito de financiar una póliza de seguros.[1] En el contrato, las partes acordaron que el reembolso del préstamo se haría en diez mensualidades. También se estableció que, en caso de incumplimiento, Progressive tendría derecho a acelerar el vencimiento de las mensualidades pendientes. Progressive alegó que Commercial Rent incumplió con los términos contractuales, dejando un saldo adeudado de $11,982.95, cantidad líquida, vencida y exigible al momento de la demanda.

El 13 de marzo de 2023, Commercial Rent contestó la demanda, negando la existencia del contrato en cuestión y presentó una reconvención.[2] En la alternativa, argumentó que Progressive había incumplido con la Reglamento Núm. 29 de la Oficina del Comisionado de Instituciones Financieras ("OCIF"), al no pagar la póliza dentro del plazo establecido de 30 días. Alegó que, aunque la póliza entró en vigor el 23 de diciembre de 2017, el pago se efectuó el 13 de marzo de 2018, es decir, 80 días después. Además, señaló que la póliza estuvo vigente únicamente 16 días, ya que fue cancelada el 29 de marzo de 2018. En su reconvención, Commercial Rent reclamó un reembolso de $13,185.60, alegando enriquecimiento injusto y solicitando la devolución de la prima no utilizada.

En el curso del procedimiento, el 14 de marzo de 2023, Progressive solicitó al TPI que el caso fuera convertido al

---

[1] Véase, Apéndice de la *Apelación*, a las págs. 16-24.
[2] Véase, Apéndice de la *Apelación*, a las págs. 25-31.

procedimiento ordinario, argumentando la complejidad de los hechos y las reclamaciones presentadas.[3] El foro primario aceptó esta solicitud y ordenó la conversión del caso al trámite ordinario.[4]

Posteriormente, el 15 de marzo de 2024, Progressive presentó una *Moción de Sentencia Sumaria*, solicitando que se declarara *Ha Lugar* la demanda de cobro de dinero y que se desestimara la reconvención presentada por Commercial Rent.[5] En su moción, Progressive argumentó que la póliza financiada estuvo vigente desde el 23 de diciembre de 2017 hasta el 5 de abril de 2018, y que las pruebas demostraban el incumplimiento de Commercial Rent con los términos del contrato, incluyendo la falta de pago de las mensualidades acordadas.

El 15 de mayo de 2024, Commercial Rent presentó una oposición a la moción, alegando que existían controversias de hechos materiales que impedían resolver el caso mediante el mecanismo de sentencia sumaria.[6] En su oposición, negó las alegaciones de Progressive y reiteró que esta última había incumplido con los términos del contrato y la normativa aplicable, particularmente el Reglamento Núm. 29 de la OCIF, al no realizar el pago de la póliza dentro del plazo de 30 días. Asimismo, insistió en que el contrato era nulo y presentó pruebas para sustentar sus alegaciones.

En respuesta, el 24 de junio de 2024, Progressive sometió una réplica a la oposición, manteniendo sus argumentos iniciales y afirmando que la evidencia demostraba claramente la existencia del contrato, el financiamiento de la póliza, y el incumplimiento de Commercial Rent.[7] Concluyó que no existían controversias reales sobre los hechos materiales del caso.

---

[3] Véase, Apéndice de la *Apelación*, a las págs. 32-34.
[4] Véase, Apéndice de la *Apelación*, a la pág. 35.
[5] Véase, Apéndice de la *Apelación*, a las págs. 39-70.
[6] Véase, Apéndice de la *Apelación*, a las págs. 71-88.
[7] Véase, Apéndice de la *Apelación*, a las págs. 96-102.

El 2 de octubre de 2024, el TPI emitió *Sentencia* declarando *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por Progressive, concluyendo que existió un contrato válido entre las partes, bajo el cual Progressive financió una póliza de seguros solicitada por Commercial Rent.[8] Además, determinó que esta última incumplió con los términos contractuales al no realizar los pagos correspondientes, y que Progressive aplicó correctamente la prima no devengada al saldo diferido, resultando en una deuda líquida, vencida y exigible de $11,980.95. En el dictamen, el TPI realizó las determinaciones de hechos siguientes:

1. Progressive es una corporación con fines de lucros debidamente incorporada y autorizada para hacer negocios en el Estado Libre Asociado de Puerto Rico.
2. La parte demandada, Commercial, es una corporación localizada en el Municipio de San Juan, cuya dirección postal es PO Box 366713, San Juan, Puerto Rico 00936.
3. La Sra. María Rodríguez Rosario, ha sido empleada de Progressive desde el año 1999, desempañándome en el área de cobros y realizando otras labores administrativas.
4. Como parte de sus funciones como Supervisora de Cobros de Progressive, María Rodríguez Rosario, tiene acceso a todos los récords de negocios de Progressive, y conocimiento personal de cómo estos se preparan y almacenan. Particularmente, tiene conocimiento personal de los historiales de pago de los contratos de financiamiento de pólizas de seguros, del funcionamiento de sistema de financiamiento que utiliza Progressive y de los formularios que se utilizan para los financiamientos. Como parte de sus funciones en Progressive, tiene a cargo verificar el estado de los préstamos otorgados por esa corporación, lo que incluye aplicar los pagos recibidos y realizar las gestiones de cobro.
5. Para que Progressive acepte financiar una póliza de seguros, la persona o entidad que solicita el financiamiento, por sí, o a través de su productor de seguro autorizado, debe suscribir el documento titulado "Contrato de Venta al Por Menor a Plazos", y realizar el pronto pago requerido, en los casos aplicables. El pronto pago debe ser efectuado a la aseguradora. No obstante, los asegurados pueden hacer el pronto pago con cheques a la orden de Progresisve, en cuyo caso, Progressive acepta el pago, y lo incluye en el cheque que se remite a la aseguradora para el pago de la totalidad de la prima anual financiada. En otras ocasiones, los financiamientos se realizan sin pronto pago, por lo

---

[8] Véase, Apéndice de la *Apelación*, a las págs. 1-15.

que Progressive realiza el pago de la totalidad de la prima a la aseguradora directamente o por medio de su agencia general.

6. Una vez Progressive recibe el formulario del Contrato de Venta al por Menor a Plazos firmado y completado en sus partes correspondientes, ya sea por la persona o entidad que solicita el financiamiento o su productor de seguros, Progressive verifica los cargos por el financiamiento, el número de plazos mensuales en el que solicitante tendrá que saldar el financiamiento, y la cantidad de cada pago mensual.

7. Igualmente, como parte del trámite de financiamiento de pólizas de seguro, Progressive asigna un número de contrato al financiamiento aceptado. Los formularios de los Contratos de Venta al Por Menor a Plazos que utiliza Progressive contienen un número de serie en la parte superior derecha que se utiliza para identificarlo, el cual no constituye el número del contrato.

8. El 13 de marzo de 2018, Progressive recibió del productor de seguros Font Insurance, Inc., un formulario de "Contrato de Venta al por Menor a Plazos" suscrito por dicho productor, en representación de Commercial, para el financiamiento de una póliza emitida por la aseguradora Universal Insurance Company, la cual se identificó con el número de póliza 560-568086.

9. Según detallado en su reconvención, Commercial indicó que solicitó a su agente de seguros o vendedor, una póliza de seguros, la cual se compraría a la compañía de seguros Universal Insurance Company. Indicó también, que, con relación a esa gestión, entregó a su agente de seguros un cheque por la cantidad de $6,592.80, con fecha de 19 de enero de 2018, pagadero a la orden de Progressive.

10. El "Contrato de Venta al Por Menor a Plazos" suscrito por el productor de seguros Font Insurance, Inc. en representación de Commercial, debió ser entregado a Progressive en o antes del 23 de diciembre de 2017. Sin embargo, el formulario de "Contrato de Venta al Por Menor a Plazos", fue entregado por el productor de seguros de Commercial a Progressive el 13 de marzo de 2018.

11. Una vez recibido el "Contrato de Venta al Por Menor a Plazos" suscrito por el productor de seguros Font Insurance, Inc., Progressive aceptó realizar el financiamiento solicitado, al cual se le asignó el Número de Contrato 01-610-156713.

12. El 13 de marzo de 2018, Progressive remitió a la orden de Eastern America Ins. Co., agencia general de Universal Insurance Company, el cheque número 074293 de Scotiabank de Puerto Rico por la cantidad de $60,000.00 en pago de la totalidad de la prima de la póliza solicitada por Commercial. El cheque remitido detallaba que el pago de la prima era para aplicación retroactiva a la fecha de efectividad de la póliza al 23 de diciembre de 2017, lo cual, era discrecional de Universal Insurance Company, como aseguradora, aceptar.

13. Una vez Progressive efectuó el pago de la totalidad de la prima de la póliza solicitada por Commercial, el 16 de marzo de 2018, Progressive recibió de la agencia general de seguros Eastern America Ins. Co., el "Contrato de Venta al Por Menor a Plazos" aceptando el financiamiento de la póliza emitida por Universal Insurance Company a nombre de Commercial. De la parte inferior del documento, surge que el 15 de marzo de 2018, Eastern America Ins. Co., dio su anuencia al financiamiento a ser realizado por Progressive.

14. De acuerdo con el "Contrato de Venta al Por Menor a Plazos" suscrito por el productor de seguros Font Insurance, Inc., en representación de Commercial, para el financiamiento de la póliza antes identificada, esta tendría una fecha de efectividad del 23 de diciembre de 2017 al 23 de diciembre de 2018, y el costo total de la prima a ser pagada por Progressive a Universal Insurance Company era de $60,000.00.

15. Los términos del "Contrato de Venta al Por Menor a Plazos" establecieron: (1) la cantidad de $5,928.00 como los cargos del financiamiento a ser provisto por Progressive; (2) que dicho financiamiento sería repagado por el Cliente en 10 plazos mensuales por la cantidad de $6,592.80, que comenzarían a partir del 23 de diciembre de 2017 y culminarían el 23 de septiembre de 2018. Por tanto, la totalidad del préstamo a ser repagado por Commercial a Progressive, ascendía a la suma de $65,928.00. El contrato también estableció que el deudor pagaría por cada plazo que esté en morosidad por más de 15 días, un 5% del importe del plazo atrasado.

16. El "Contrato de Venta al Por Menor a Plazos" contiene una sección en su primera página titulada "Pagaré", la cual dispone los términos de repago acordados entre el Cliente y Progressive, y dispone con relación a esos términos, lo siguiente: "Esta obligación surge del pago hecho por [Progresive] a la Compañía de Seguros o a su Agente General en lo adelante denominada la Compañía, en liquidación total de la(s) prima(s) de la(s) arriba mencionada(s). La falta de pago a su vencimiento otorga a la Corporación el derecho a acelerar el pago de los plazos pendientes a los veinticinco (25) días, y solicitar la CANCELACIÓN de la(s) pólizas. Los términos y condiciones adicionales que aparecen al dorso forman parte del Contrato.".

17. El "Contrato de Venta al Por Menor a Plazos" contiene una sección en su primera página titulada "GARANTÍA", la cual establece lo siguiente: "Como garantía, cede el comprador a Progressive Finance and Investiment Corp. cualquier reembolso por prima no devengada.".

18. La póliza de Commercial con Universal Insurance, entró en vigor el 23 de diciembre de 2017, ya que la aseguradora aplicó el pago realizado por Progressive de manera retroactiva.

19. El 19 de marzo de 2018, Progressive recibió de Commercial un pago por la cantidad de $6,592.80, el cual fue aplicado al primer plazo del repago del

financiamiento correspondiente al 5 de enero de 2018.

20. El 27 de marzo de 2018, Progressive notificó a Commercial una carta, advirtiéndole que debido a la falta de los plazos 2 y 3 bajo el contrato de financiamiento correspondientes al 5 de febrero y 5 de marzo de 2018, su póliza tenía una solicitud de cancelación a la Aseguradora que sería efectiva al 29 de marzo de 2018. La carta advirtió que la deuda total a ese momento ascendía a $13,844.88, la cual estaba compuesta, de los dos plazos vencidos por $13,185.60, más los cargos por demora por $659.28.

21. Posteriormente, el 4 de abril de 2018, Progressive recibió de Commercial un segundo pago por la cantidad de $6,592.80, el cual fue aplicado al segundo plazo del repago del financiamiento correspondiente al 5 de marzo de 2018.

22. Los pagos realizados por Commercial no pusieron al corriente su contrato de financiamiento con Progressive, pues a esa fecha se encontraban al descubierto los plazos del pagaré correspondientes a marzo y abril de 2018.

23. De conformidad con el expediente, el 26 de marzo de 2018, Eastern America Ins. Co., emitió un aviso a Commercial, a su dirección postal P.O. Box 366713, San Juan, P.R. 00936, informándole que su póliza con Universal Insurance Company (5600568086) había sido cancelada con efectividad al 5 de abril de 2018 y, que el exceso de prima no devengada sería devuelto.

24. Universal Insurance Company, notificó a Commercial, a su dirección postal P.O. Box 366713, San Juan, P.R. 00936, una declaración fechada al 9 de julio de 2018 que indicaba que la póliza 5600568086, cuya cubierta era efectiva del 23 de diciembre de 2017 al 23 de diciembre de 2018, había sido cancelada con efectividad al 5 de abril de 2018 y, que la prima no devengada a ser devuelta era por la cantidad de $38,776.00, lo que equivalía a 262 días, de los 365 de duración original.

25. La devolución de la prima no devengada ($38,776.00) fue realizada por Eastern America Ins. Co., mediante un cheque por la cantidad de $53,808.00, fechado al 11 de julio de 2018, a la orden de Progressive, el cual incluía otras devoluciones de financiamientos realizados por Progressive.

26. Así las cosas, el 17 de julio de 2018, Progressive notificó a Commercial, que luego de que la póliza fuera cancelada por la Aseguradora a su petición, y de que esta le devolviera la prima no devengada por $38,776.00, de conformidad con lo que establece el "Contrato de Venta al Por Menor a Plazos", al aplicar la prima no devengada al balance total diferido que correspondía pagar al Cliente bajo el contrato ($50,756.95), resultó una deuda a pagar a favor de Progressive en la cantidad de $11,980.95.

27. Commercial no se comunicó con Progressive para pagar la deuda, ni para solicitar un plan de pagos. Commercial incumplió con los términos del "Contrato de Venta al Por Menor a Plazos", por lo

cual, adeuda a Progressive la cantidad de $11,980.95, por concepto de principal, intereses acumulados y cargos por demora, deuda que está vencida y que es líquida y exigible.

En desacuerdo con la determinación del TPI, Commercial Rent acudió ante nos el 14 de noviembre de 2024 mediante el presente recurso de *Apelación.* Señala la comisión por el TPI de los errores siguientes:

Erró el Tribunal de Primera Instancia al declarar Ha Lugar la Moción de Sentencia Sumaria presentada por la parte apelada, a pesar de existir controversias sustanciales en cuanto a los hechos pertinentes; y que, como cuestión de derecho, no procede ni debe dictarse sentencia sumaría a favor de la parte apelada.

Erró el Tribunal de Primera Instancia al aceptar la declaración jurada de la señora María Rodríguez Rosario, a pesar de que la misma no tiene valor probatorio y es insuficiente para demostrar la suficiencia de lo que allí se concluye.

De conformidad con la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7(B)(5), procedemos a resolver prescindiendo de cualquier trámite procesal ulterior, por entender que resulta innecesario para la disposición del presente recurso.

**II**

**A.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, regula la moción de sentencia sumaria como un mecanismo procesal que permite resolver litigios de manera rápida y eficiente cuando no existen controversias genuinas sobre hechos materiales, limitando el análisis a cuestiones de derecho. Su propósito principal es garantizar que los pleitos civiles se resuelvan de forma justa, rápida y económica. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020). Según la Regla 36.3(e), el tribunal puede dictar sentencia sumaria si, a partir de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas u otras

evidencias, se demuestra que no hay una controversia sustancial sobre hechos esenciales y que, como cuestión de derecho, corresponde resolver a favor de la parte promovente. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664 (2018).

La jurisprudencia ha establecido que una sentencia sumaria no procede si existen hechos materiales y esenciales controvertidos, alegaciones afirmativas no refutadas o si surgen controversias genuinas en los documentos presentados. Además, este mecanismo no es adecuado para resolver disputas que impliquen elementos subjetivos como intención, propósitos mentales o negligencia. *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656 (2017); *Const. José Carro v. Mun. de Dorado*, 186 DPR 113, 129 (2012).

En cuanto a la revisión de una sentencia sumaria, los foros apelativos deben examinar el expediente de manera *de novo* para verificar el cumplimiento de las exigencias procesales y determinar si los hechos materiales no están controvertidos y si el tribunal aplicó correctamente el derecho sustantivo. *S.L.G. Fernández-Bernal v. RAD-MAN et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

**B.**

La Regla 60 de Procedimiento Civil, 32 LPRA Ap. V, R. 60, establece un procedimiento sumario para la adjudicación de reclamaciones en casos de cobro de dinero que no excedan los $15,000, excluyendo los intereses. Este mecanismo está diseñado para agilizar la resolución de este tipo de pleitos, evitando los trámites propios del procedimiento ordinario y facilitando un acceso más eficiente a la justicia. Según lo dispuesto, la parte demandante debe presentar un proyecto de notificación-citación junto con la demanda, el cual será expedido de inmediato por el secretario del tribunal. La diligencia de la notificación debe realizarse dentro de

los 10 días siguientes, ya sea por entrega personal o correo certificado, y debe incluir la fecha de la vista, que debe celebrarse en un plazo no mayor de tres meses desde la presentación de la demanda, pero no menos de quince días desde la notificación.

Durante la vista, el tribunal resolverá todas las cuestiones litigiosas y dictará sentencia de forma inmediata. Si la parte demandada no comparece y se demuestra que fue debidamente notificada, el tribunal puede dictar sentencia en rebeldía, prescindiendo de la necesidad de testigos por parte del demandante, siempre que los documentos presentados evidencien de manera suficiente la reclamación. Regla 60 de Procedimiento Civil, *supra*. Sin embargo, la regla también permite convertir el caso al procedimiento ordinario cuando la parte demandada presenta una reclamación sustancial o, en el interés de la justicia, así lo solicita cualquiera de las partes. El tribunal también puede, *motu proprio*, ordenar la conversión si considera necesario un análisis más exhaustivo. *Cooperativa v. Hernández Hernández*, 205 DPR 624, 637 (2020).

En cuanto a las normas aplicables, el procedimiento sumario bajo la Regla 60 permite la utilización de reglas procesales ordinarias de manera supletoria, siempre que no sean incompatibles con el propósito ágil del proceso. *RMCA v. Mayol Bianchi*, 208 DPR 100 (2021); *Asoc. Res. Colinas Metro S.L.G.*, 156 DPR 88, 98 (2002). Una vez convertido al trámite ordinario, las disposiciones generales del Procedimiento Civil aplican en su totalidad. Este marco busca equilibrar la celeridad del proceso con la garantía de justicia sustantiva en los casos de cobro de dinero en Puerto Rico.

**III**

En su recurso de *Apelación*, Commercial Rent señala que el TPI erró al emitir sentencia sumaria, pues existían controversias materiales sobre hechos esenciales, lo que impedía resolver el caso

mediante este mecanismo. Además, cuestiona la validez probatoria de la declaración jurada presentada por Progressive. En particular, Commercial Rent señala que están en controversia los hechos siguientes:

1. Si Commercial Rent otorgó el "Contrato de Venta al Por Menor a Plazos" que se menciona en la *Demanda.*
2. Si por alguna razón hubiera existido un contrato, lo cual se niega, Progressive incumplió con sus términos y condiciones.
3. Si Progressive incumplió con el Reglamento 29 de la Oficina del Comisionado de Instituciones Financieras de Puerto Rico. (OCIF).
4. Si Progressive no pagó la póliza a la compañía de seguros dentro del término de treinta (30) días desde la fecha en que la misma entró en vigor.
5. Si no fue hasta el 13 de marzo de 2018 que Progressive pagó la póliza a la compañía de seguros; esto es, ochenta (80) días después de la entrada en vigor de dicha póliza.
6. Si, a pesar de que Commercial Rent efectuó el pago, Progressive nunca notificó el Contrato de Venta al Por Menor a Plazos objeto del presente caso.
7. Si no fue luego de la presentación de la Demanda que Commercial Rent advino en conocimiento sobre el contrato que se anejó a dicha Demanda.
8. Si al haber efectuado el pago antes mencionado, Commercial Rent entendió que estaba asegurada desde 23 de diciembre de 2017.
9. Si Commercial Rent adeuda a Progressive la cantidad de $11,980.95 declamada en la Demanda.
10. Si existe una deuda a favor de Progressive que sea líquida; que está vencida; y que sea exigible.
11. Si, como parte del "Contrato de Venta al Por Menor a Plazos", la parte demanda firmó un "pagare", mediante el cual se obligó a pagar a Progressive, las cantidades desembolsadas a la compañía de seguros en pago de la póliza de seguros solicitada por la parte demandada.

En síntesis, Commercial Rent alega que realizó dos pagos de $6,592.80 a favor de Progressive, su agente o vendedor de seguros, para financiar una póliza de seguros con Universal Insurance Company. Sin embargo, sostiene que Progressive no realizó el pago correspondiente a la compañía aseguradora dentro del término de 30 días desde la fecha en que la póliza entró en vigor, incumpliendo así con sus responsabilidades y el Reglamento Núm. 29 de la OCIF.

La póliza en este caso debía haber entrado en vigor el 23 de diciembre de 2017, pero el pago a la aseguradora no se realizó hasta

el 13 de marzo de 2018, es decir, 80 días después, y fue cancelada el 29 de marzo de 2018, durando solo 16 días.

Commercial Rent también sostiene que no firmó el Contrato de Venta al Por Menor a Plazos mencionado en la demanda, por lo que no existe una obligación contractual válida. Finalmente, argumenta que no adeuda los $11,980.95 reclamados, ya que no existe deuda líquida ni vencida, y señala que el incumplimiento fue de Progressive.

Sin embargo, este Tribunal, tras realizar una evaluación *de novo*, concluye que las determinaciones del TPI están debidamente sustentadas en la evidencia presentada. No se observan controversias materiales que afecten la resolución de los hechos esenciales del caso, ya que las alegaciones no desvirtúan la existencia del contrato ni el incumplimiento de sus términos. Quedó probado que Progressive financió una póliza de seguros solicitada por Commercial Rent bajo un contrato válido, y que la parte apelante incumplió los términos al no realizar los pagos acordados. Aunque Commercial Rent argumentó incumplimientos regulatorios por parte de Progressive y negó la existencia del contrato, la prueba respaldó la determinación del TPI. Existe una deuda líquida, vencida y exigible por parte de Commercial Rent hacia Progressive por $11,980.95 más intereses legales del 9.5%.

Así también, este Tribunal concluye que la señora María Rodríguez Rosario estaba plenamente legitimada para emitir su declaración jurada sobre el contrato y la deuda debido a su rol y funciones dentro de Progressive Finance & Investment Corp. Como empleada de la compañía desde 1999, desempeñándose en el área de cobros y otras labores administrativas, Rodríguez Rosario tenía acceso directo y conocimiento de los registros comerciales de la entidad, lo que incluía historiales de pago, contratos de

financiamiento de pólizas de seguros y el funcionamiento del sistema utilizado por Progressive para procesar estos contratos.

En su posición como Supervisora de Cobros, sus responsabilidades incluían verificar el estado de los préstamos otorgados, registrar los pagos recibidos y gestionar la cobranza. Además, estaba a cargo de validar los términos y condiciones de los contratos de financiamiento suscritos, asegurándose de que la información presentada en los mismos reflejara fielmente las transacciones realizadas entre las partes. Este conocimiento le permitió constatar que el *Contrato de Venta al Por Menor a Plazos* había sido suscrito por Commercial Rent, así como detallar el incumplimiento de esta última con respecto a los pagos estipulados.

En su declaración, Rodríguez Rosario confirmó que Commercial Rent había realizado únicamente dos pagos de los diez estipulados, que Progressive había aplicado correctamente la prima no devengada al saldo adeudado y que la deuda resultante, de $11,980.95, estaba líquida, vencida y exigible. Su acceso directo a los documentos y sistemas internos de Progressive, así como su experiencia supervisando este tipo de procesos, validan la fiabilidad de su testimonio, el cual fue determinante para sustentar las conclusiones del foro primario. Además, su declaración estuvo respaldada por la documentación pertinente, cumpliendo con los requisitos legales para sustentar una moción de sentencia sumaria establecidos en la Regla 36 de Procedimiento Civil, *supra.*

Por lo tanto, confirmamos la sentencia apelada. Commercial Rent deberá pagar a Progressive la suma de $11,980.95, más los intereses acumulados al tipo legal del 9.50%.

**V**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones